## RUDOLPH *v.* COVELL, Administrator.

In cases for the specific performance of contracts, courts of equity, in granting relief, are governed by a sound discretion.

Where a petition for the specific performance of a contract for the conveyance of real estate, alleged that Z. was the owner of a certain lot in the city of Dubuque, and being about to leave that city, gave one G. verbal authority to sell the lot for not less than $175.00, and receive part of the money to bind the bargain; that Z. left Dubuque, stating that he intended to settle in Saint Louis, or at such place as he could most prosper in at his trade, which was that of a tailor; that he never returned, and has not been heard from since; that in February, 1851, G. contracted to sell the lot to complainant, for the sum of $175.00, and paid down $4.90, to bind the bargain—the balance to be paid on the receipt of the deed; that Z. gave G. no power of attorney to execute a deed, but directed G., when he should find a purchaser, to send to Z. and he would execute one; that G. and complainant both wrote to Z. at St. Louis, informing him of the sale, and to obtain a deed; that they took other measures to find him; that no answer was received, nor was Z. afterwards found or seen by the parties, or by any of those who knew him at Dubuque; that at length news came of his death, and the respondent was appointed his administrator; that the lot had been sold for taxes, and redeemed by the complainant; and that he had paid all the taxes assessed upon the lot, since his purchase; and where the evidence of the facts was uncertain and obscure, and it appeared that the lot had greatly appreciated in value; *Held*, That the complainant was not entitled to relief.

Rudolph v. Covell, Administrator.

*Appeal from the Dubuque District Court.*

FRIDAY, April 9.

This is a bill to enforce the performance of an alleged contract for the sale of a lot in the town of Dubuque, Iowa. The bill avers that Zinck, being the owner of lot numbered two hundred and sixty-nine, in Dubuque, and being about to leave that town, gave to one Henry Grimm, verbal authority to sell the lot, for not less than one hundred and seventy-five dollars, and to receive part of the money to bind the bargain ; that Zinck left Dubuque, stating that he intended to settle in St. Louis, or at such place as he could most prosper in at his trade, which was that of a tailor; that he never returned, and has never been heard from since; and that in February, 1851, Grimm contracted to sell the lot to Rudolph, for the sum of $175, and he paid down $4 90, "to bind the bargain," the balance to be paid on the receipt of the deed ; that Zinck gave Grimm no power of attorney to execute a deed, but directed him, when he should find a purchaser, to send to Zinck, and he would execute one; that Grimm and Rudolph both wrote to Zinck at St. Louis, to inform him of the sale, and to obtain a deed, and took other measures to find him, but that no answer was received, nor was he afterward found or seen by the parties, or by any of those who knew him at Dubuque; that at length news came of his death, and the respondent was appointed administrator ; that the lot had been sold for taxes, and complainant had redeemed it ; and that he has paid all taxes assessed upon it since his purchase. Upon this, the petitioner prays a decree that the administrator convey the lot to him.

The cause was heard upon bill, answer, and testimony ; and the district court decreed against the complainant, ordering that the bill be dismissed, from which decree he appeals.

*David S. Wilson*, for the appellant, filed a written argu-

ment upon points in the case not touched by the decision of the court, and which is, therefore, omitted.

*J. S. Covell, pro se.*  From the argument of Mr. Covell, the reporter extracts the following:

1. It is always within the discretion of a court, whether to decree a specific performance or not. *Frisby* v. *Ballance*, 4 Scam., 297; *Seymour* v. *Delancy*, 6 John. Ch., 223; *Perkins* v. *Wright*, 3 Har. & McHenry, 326.

2. Specific performances refused, and party left to his remedy at law, or what is equivalent to it, because it was hard on vendor, and there were some suspicious circumstances. This case was in Pennsylvania, where there is no court of equity, and the suit equitable ejectment. *Campbell* v. *Spencer*, 2 Binney, 129.

3. Specific performance refused, when the price was fully equal to the value, and not the slightest blame attached to the purchaser, but the vendor was intemperate in his habits, but capable of contracting, and the sale of the land would be greatly more disadvantageous to him than any advantage he could derive from the purchase money. *Henderson* v. *Hays*, 2 Watts, 148.

4. Chancery will often refuse to enforce a contract which it would also refuse to annul, and leave the party to their remedy at law. *Jackson* v. *Ashton*, 11 Pet., 229; *Colson* v. *Thompson*, 2 How., (U. S.,) 336.

5. If it be doubted whether an agreement has been concluded, or is a mere negotiation, chancery will not decree specific performance. *Carr* v. *Duval*, 14 Pet., 77; *Huddlestone* v. *Briscol*, 11 Ves. Jr., 591, 592. The contract must be certain. *Montgomery* v. *Norris*, 1 Howard, (Miss.,) 506.

6. Specific performance of a contract will not be decreed, when the terms of the contract are uncertain; nor after a long lapse of time, and after the circumstances under which it was made have materially changed. *Pigg* v. *Corder*, 12 Leigh., 69.

7. It would be dangerous to permit parties to lie by,

with a view to see whether the contract will be a gaining or a losing one, and abandon it or not, as may prove to his interest. There must be no great change in circumstances to work hardship on defendant. *Rogers* v. *Sanders*, 16 Maine, 100; *Perkins* v. *Wright*, 3 Har. & McHenry, 326; *Goodwin* v. *Lyon*, 7 Porter, 313.

8. Specific performance should not be decreed, unless the complainant has paid or offered to pay, the consideration on which the contract was founded. *Bearden* v. *Wood*, 1 A. K. Marshall, 450.

9. Specific performance not decreed, unless the complainant shows himself "ready, desirous, prompt and eager." *Brown* v. *Haines*, 12 Ohio, 1; *Milward* v. *Thanet*, 5 Ves. Jr., 720, note; *Guest* v. *Hornfray*, 5 Ib., 818; *Alley* v. *Deschamp*, 13 Ib., 225; *Benedick* v. *Lynch*, 1 Johns. Ch., 370; *Kirby* v. *Harrison*, 22 Ohio R., 326.

10. Specific performance sometimes decreed on the ground of part performance, but then it is on the principle that it would work a fraud upon the opposite to refuse specific performance, and the party cannot be restored to his former situation, in other words, damages at law will not be a full compensation, but when money has been paid, it admits of full compensation without resorting to a court of equity. Roberts on Frauds, 153–155.

11. This agreement, to be sustained, should have been in writing. It is denied in the answer, and a valid agreement should have been proved. This objection would be fatal, if the law prior to the Code, is to be considered as the law regulating this case. It may be said that a portion of the purchase money had been paid. But I consider the payment too small, in the first place, and in the second place, it has never been paid to the party himself, nor offered. I suppose an offer should have been made to the administrator at least. *Ash* v. *Daggy*, 6 Porter, (Indiana) 260. Code.

12. If the defendant admits a parol contract, he must set up the statute. But not where he denies any agreement. There the complainant must prove a valid one.

*Jervis* v. *Smith et al.*, 1 Hoff. Ch., 470. Of course we could not set up the statute of frauds, when we deny the contract. We know nothing about it. How can we say it was verbal, and not in writing ?

WOODWARD, J.—Cases for the specific performance of contracts, are said to lie in the discretion of the court of equity.

The following passage from a case before the court of appeals in Maryland, (*Tyson* v. *Watts*, 7 Gill, 129,) expresses this doctrine, briefly and substantially : "This is a bill for the specific performance of an agreement; and it is, therefore, an application to the sound discretion of the court, which withholds or grants relief, according to the circumstances of each particular case, as it presents itself. The discretion, it is true, is not arbitrary and capricious, but sound and reasonable, adapting itself, and being governed, as far as practicable, by general rules and principles, when those rules and principles are not in conflict with the justice of the case between the parties. There would seem to be no doubt that, when a court of chancery is called upon to exert its extraordinary jurisdiction, in compelling the specific performance of contracts, though it is not entirely exempt from those general principles of equity which have been found, by experience, best and most surely to advance the aims and ends of justice, there is, nevertheless, more freedom in its action, than when exercising its ordinary powers."

Should the present cause be disposed of by the discretion alone of the chancellor, it would be easily determined adversely to the prayer of the petitioner. But although this may be within the lawful power of the court, yet it is always desirable to make the least draft, which is possible, upon this undefined power of discretion, and to determine causes upon established rules ; and, we think, this cause may be decided upon the latter ground.

In order to prevail, the complainant must show that Zinck gave Grimm authority to sell the lot, and to make

a contract which should be binding on the principal; and he must show that the agent did make such a contract of sale, and that it did not fall under the operation of the statute of frauds. In this case, the property has advanced in value some five or six-fold, since the making of the supposed contract, and the plaintiff seeks to enforce the contract of one now dead, against his administrator. Under these circumstances, and having regard to the rights of the possible heirs at law, it would seem that the court would be justified in looking at the case with even a more careful eye, than in a case where the vendor was living.

In respect to some of the facts having an important bearing in the case, there is a great degree of uncertainty and indefiniteness. Thus, in relation to the death of Zinck, the vendor, we are left in entire ignorance, except so far as mere rumor lends its aid. If he died before the contract was made, the authority of Grimm had ceased.

The bill says the contract was made in February, 1851, and the proof places it in June, 1851. The bill is quite indefinite as to the time Zinck left Dubuque, but rather implies that it was a short time before the contract was made by Grimm; whilst the proof places it in the year 1848 or 1849, and facts are proved which render this probable. There is no attempt to show, either the period of his leaving, or that of his death. The only evidence bearing upon this question, is incidental. It would seem that he went to California after he left Dubuque, and the report was that he died at St. Louis in 1852, after his return from California. There is no proof, in fact, that he is dead, other than the grant of administration. There is none at all of the time of that event. For aught that appears to the court, he may as probably have died before, as after the making of the contract between Grimm and Rudolph.

With regard to the identity of the lot, there is also a very considerable degree of obscurity. The complainant claims that numbered two hundred and sixty-nine. Several of the witnesses speak of a lot " on the corner of Elev-

enth and Clay streets," and by other similar descriptions, without sufficiently connecting these with the above number. The proof might possibly satisfy some minds, but, at the best, it is not satisfactory, and does not give the mind that assurance of right, which ought to exist. And we must further say, that there is a vagueness—an indefiniteness, and want of certainty—concerning the authority given to Grimm, and the contract itself. The testimony is general and very brief, and does not possess the desired definiteness.

In other respects, also, the evidence is loose and unsatisfying. Thus, from the deposition of Grimm himself, it is quite uncertain when Zinck left Dubuque and went to St. Louis, for Grimm gave his testimony in July, 1854, and says Zinck left about three years before, and that he, (Grimm) paid the taxes two years after Zinck left, and speaks of Zinck's return; whilst in the same deposition, he says the contract was made in the spring of 1581; that Rudolph paid all the taxes after the contract was entered into; and that Zinck never returned after that point of time. Such being the state of the case, it appears to us that the uncertainty and obscurity resting upon it, forbid a decree for a specific performance.

Both the power to sell, and the contract of ·sale, lying in parol entirely, they must be made out clearly, in order to warrant the court in a decree, giving the property to the complainant, and those things must be shown before we reach the other questions: namely, whether the contract was good under the statute of frauds; and whether there was a part-payment, or whether the acts shown amount to a possession. Another question made is this: admitting that Zinck gave authority to sell, whether it was a power to make a conclusive and binding contract, or whether it was to be subject to his confirmation or rejection. Without entering upon these points, we are of the opinion, that the petitioner fails to show such facts as will authorize the court in rendering a decision in his favor. 2 Sandf. Ch., 117. It should be remarked before closing, that possession

under the contract, is not averred, nor is it made an issue by any of the pleadings, but the case has been treated as if this were one of the issues made.

The decree of the district court is affirmed.