## AUTER v. MILLER.

1. **Statute of frauds:** PAYMENT OF CONSIDERATION. The sufficiency of evidence to show a payment of the consideration agreed upon in a verbal contract for the sale of real estate to the vendor, considered and determined.

2. —— ADMISSION BY VENDOR. Under § 4009 of the Revision of 1860, when the plaintiff is otherwise entitled to a specific performance, and the defendant either admits or does not deny in his answer an unwritten contract, it may be enforced, notwithstanding the benefit of the statute is insisted upon in the answer.

3. —— The answer admitted that "defendant negotiated to and with the plaintiff for a sale of the lot for $700, but denies that the defendant did sell the same." *Held*, that it did not admit a final or concluded agreement between the parties.

4. —— EVIDENCE OF DEFENDANT. When the plaintiff, in an action for specific performance relies upon the evidence of the defendant (under § 4070 of the Revision), to establish his claim, he must rely on that alone.

5. —— DISCRETION. The specific execution of an agreement, when established, rests in the sound discretion of the court.

*Appeal from Blackhawk District Court.*

MONDAY, APRIL 17.

SPECIFIC PERFORMANCE: STATUTE OF FRAUDS: PAYMENT OF CONSIDERATION: EFFECT OF ADMISSION OF VERBAL CONTRACT IN THE ANSWER, AND ITS PROOF BY THE TESTIMONY OF THE DEFENDANT. The petition claims that the defendant, on the 10th day of October, 1863, *verbally* sold part of lot 1, block 8, Waterloo, to the plaintiff, for the price of $700, payable in a due-bill of the defendant, held by the plaintiff, for about $252, and in promissory notes on other persons, amounting in all to the sum of $700. The plaintiff contends that these notes were by him delivered to and received and accepted by the defendant on the contract. This the defendant denies. The testimony on the subject is referred to in the opinion.

As it is claimed by the plaintiff that the answer admits the making and terms of the contract, it is necessary to state the substance of the material parts of it with accuracy.

It sets out by admitting "that, on or about the 10th day of February, 1863, the defendant negotiated to and with the plaintiff, for a sale of the lot mentioned in the petition, to the plaintiff, by an unwritten verbal agreement, and agreed to sell the same to the plaintiff for the sum of $700, to be paid in promissory notes" (indefinitely describing them), but denies that the defendant did sell to the plaintiff the said premises, and denies that "he ever accepted or received from the plaintiff any or either of the said notes."

And the second count in the answer alleges, that on the 10th of October, 1863, the parties, in the office of the defendant, were negotiating for a sale of the lot, and "were selecting such notes as the defendant was willing to take in payment, and when and at the time the defendant had selected such notes as he was willing to take in payment for the premises, and had laid them by themselves, one Capwell came into the office of the defendant, and the business then being transacted by and between the plaintiff and defendant was interrupted and broken off, and the plaintiff took the notes which had been so selected by the defendant and laid them aside on the other end of the counter in the office of the defendant, and thereupon the plaintiff left the office of the defendant, leaving the said notes lying on the counter in the defendant's office. They laid there until defendant had occasion to leave his office, when, out of prudence and to prevent them from being lost or destroyed, defendant took them and laid them in a drawer, where they remained till the defendant closed his office for the night, when, for the same reasons, defendant put them into his safe."

"The notes," it is further alleged in the answer, "remained in the safe until Monday, the 12th October, 1863, when the defendant (the plaintiff then being in his office)

took the notes from the safe and offered them to the plain-tiff, and at the same time informed him that he (the defendant) could not carry the verbal agreement into effect, and that he (the defendant) should not convey the premises to the plaintiff, and defendant then offered to pay the plaintiff the amount of the due-bill."

The answer then alleges that for the past seven or eight years the plaintiff had kept his money, notes and private papers in the defendant's safe, which was used in common by the plaintiff and defendant; that the said notes now remain there, and have ever since remained there, the defendant claiming no ownership or control over them, having merely put them there to prevent their loss or destruction.

The answer also alleges that the said notes were all pay-able to the plaintiff's *order*, and the same were never indorsed by the plaintiff.

The answer also sets up and insists upon the statute of frauds; also, that the plaintiff has an adequate remedy at law.

Testimony was taken, and on the first hearing the Dis-trict Court entered a decree dismissing the petition. From this decree the plaintiff appeals.

*Bissell & Shiras* for the plaintiff.

*Jno. N. Rogers* for the defendant.

DILLON, J. — By our statute of frauds (Rev., §§ 4006, 4007), contracts for the sale of land are required to be evidenced by a "writing, signed by the party charged, or his lawfully authorized agent." To this there are, however, certain exceptions created by the statute. Thus, the statute does not apply "where the purchase-money, or any portion thereof, has been received by the vendor, or where the vendee, with the

1. STATUTE OF FRAUDS: payment of consideration.

actual or implied consent of the vendor, has taken and held possession of the land under and by virtue of the contract, or where there is any other circumstance which, by the law heretofore in force, would have taken a case out of the statute of frauds." (Rev., § 4008.)

And it is further provided in the next section (Rev., § 4009), that "the above regulations, relating merely to the proof of contract, do not permit the enforcement of those not denied in the pleadings."

Again, it is declared in the succeeding section (Rev., § 4010), that "nothing in the above provisions shall prevent the party himself, against whom the unwritten contract is sought to be enforced, from being called as a witness by the opposite party, nor his oral testimony from being evidence."

It is not contended by plaintiff that he ever received or held possession of the property under the contract.

He relies, to take the case out of the statute upon the fact, as he claims it to be, that the notes, that is, the purchase-money or consideration for the lot, "has been received by the vendor." (Rev., § 4008, above cited.)

If this position could be maintained in point of fact, the statute of frauds would not be available to the defendant as a defense.

This presents the question, purely one of fact, whether the notes which the defendant was to receive in payment for the lot were ever *finally delivered* to him by the plaintiff on the contract. Upon a careful examination of all the testimony on this point, we are all of the opinion that the notes were not thus delivered to the defendant. It very satisfactorily appears that the interview between the parties was prematurely brought to a close by the entrance of Mr. Capwell; that the defendant left the presence of the plaintiff to transact his business with Mr. Capwell; that before the defendant's return the plaintiff had departed,

leaving the notes, which had been selected by the defendant, on the counter.

The plaintiff admits, in his testimony, that "at the time the interest was being reckoned on the notes, something was said about indorsing the notes, but what it was I cannot now remember." Defendant testifies on this point as follows: "After the notes were selected and the interest computed, I took up the notes in my hand and said to Mr. Auter, 'these notes must be indorsed before I can take them; I cannot use them as they now are, as they are made payable to your order.' He replied, 'that all he supposed was necessary was his name upon them.' I said 'yes,' and laid the notes down on the counter in one pile. Mr. Capwell came in, &c., and Mr. Auter picked up the notes and laid them on the other end of the counter, and went out, leaving the notes there," while the defendant was engaged with Capwell.

It is indisputable that the plaintiff was to indorse the notes, and that this was never done. He probably intended to do so when he received his deed. Being a business transaction, it is probable that the delivery of the deed and of the notes were intended to be concurrent acts. Afterwards, when the plaintiff demanded a deed, he said he would indorse the *notes* when he received a deed. For these reasons we think the plaintiff has failed to show a delivery of the notes to the defendant in payment of the purchase-money of the lot, or in execution of the contract on his part.

II. The plaintiff next claims (under § 4009 of the Revision above quoted), that the contract sought to be enforced 2. —— is not denied in the answer, and therefore the admissions by vendor. statute of frauds does not prevent its enforcement.

The object of this section, in view of the decisions in England and in this country, is obvious. The question has been much discussed whether a parol agreement could

be specifically enforced if admitted by the defendant in his answer; and whether, if admitted, a specific execution could be defeated if the answer insisted upon the benefit of the statute. (See 1 Sugd. on Vend. & Pur., Cap. III, § 6, 7 Am. ed., 154–158, and authorities cited; 2 Story Eq. Juris., §§ 755, 758; 1 Lead. Cas. in Eq., 567, 670; Willard's Eq., 280, 282.) Whatever would be the better rule aside from the statute, we are clear, under § 4009 of the Revision, that if the plaintiff is otherwise entitled to a specific performance, and the defendant has either admitted or not denied in his answer the unwritten contract, it may be enforced, although the benefit of the statute may be insisted on in the answer; § 4010 confirms the correctness of this view. (*See next division of this opinion.*)

This brings us to the question, whether the contract sought to be enforced is or is not denied in the answer.

The answer is not very clear. It admits that "the defendant negotiated to and with the plaintiff for a sale of the lot for $700, but denies that the defendant did sell the same," &c. We think, fairly construed, that the answer means to admit the negotiation, fixing of terms, &c., but to deny that there was any final and concluded agreement between the parties.

If this is the true view of the answer, it follows that the plaintiff is not entitled to a specific execution of the contract, on the ground that it is admitted, or, what is the same thing, not denied in the pleading.

III. It is next urged, by the plaintiff, that he has established the contract sought to be enforced by the testimony of the defendant himself. Under our statute (Rev., § 4010, above quoted), if the defendant, when examined as a witness, admits the existence of the verbal contract, it may be enforced the same as if it had been in writing duly signed; and this for the very good reason that there is no danger of fraud and perjury

*4. —— evidence of the defendant.*

when the party, whom the statute is designed to protect, himself admits on oath the contract and its terms.

But when the plaintiff relies entirely on this base, he must establish the contract by the testimony of his adversary, and by that alone. He cannot contradict it by other witnesses, or by other witnesses supply chasms or omissions in it.

In this view of the case, we are restricted to an examination of the testimony of the defendant; and the question is, does that in and of itself prove or establish the existence of the contract sought to be enforced? We cannot here set forth the testimony of the defendant *in extenso*. It is sufficient to say that it corresponded, literally, precisely, exactly with the answer, the essential parts of which are exhibited in the statement of the case.

One additional material fact is elicited. The plaintiff in his petition claims that the defendant was to make him a warranty deed.

The defendant testifies " that on Monday morning (the alleged contract having been made the Saturday before), I met Mr. Auter on the steps of my office and told him I could not deliver him a deed of general warranty as we had talked, as my title was through a foreclosure of a mortgage; that Dennison's wife had never signed the mortgage, and therefore had her right of dower in the premises. I then offered him the notes he had left upon the counter; he refused to take them, and demanded a deed," &c.

The members of the court are not exactly of one mind upon the question whether the defendant's testimony establishes that there was a finished and complete contract between the parties.

But, upon the assumption (the correctness of which admits of grave doubt) that there was a definite contract concluded, it was an impromptu one. No part of the money was paid— no possession taken, and no acts done

5. ——
discretion.

upon the faith of it. We have no reason to doubt that the defendant's statement about the defect of the title was true. The plaintiff did not controvert its truth. He did not offer to dispense with a deed of general warranty. This defect the defendant had overlooked in their verbal negotiations. It would, doubtless, have occurred to him if they had, as the statute requires, deliberately undertaken to put their contract in writing.

The specific execution of agreements, when established, rests in the sound discretion of the court; and the party will often be remitted to his legal remedy. *Rudolph* v. *Covell*, 5 Iowa, 525; *Young* v. *Daniels*, 2 Id., 126.

Besides, the petition is vague; and the plaintiff's and defendant's testimony differs as to the precise notes which were to be turned out in payment of the lot.

We would be at a loss specifically and exactly to describe in a decree for the plaintiff *what* notes the plaintiff should indorse and deliver to the defendant. *Williamson* v. *Williamson*, 4 Iowa, 297.

Under these circumstances, and for these reasons, this court are unanimously of the opinion that the exercise of a sound judicial discretion requires us to deny a specific execution of the agreement, leaving the plaintiff to assert his rights, if any he hath, by an action at law for damages.

It being, to say the least, uncertain whether the verbal agreement was sufficiently matured to be binding, and the number and particular notes to be turned out in payment not being definitely shown upon the record, it would be against principle and the authorities to grant the specific relief asked in the petition. *Williamson* v. *Williamson*, 4 Iowa, 297; *Phillips* v. *Thompson*, 1 Johns. Ch., 131; Id., 274; *Colson* v. *Thompson*, 2 Wheat., 336; *Harris* v. *Knickerbacker*, 5 Wend., 638.

Affirmed.