McDaniels v. Whitney.

## McDANIELS v. WHITNEY.

### I. PER BECK, CH. J., AND DAY, J.

1. **Contract:** DIVISIBILITY. W. made the following proposition in writing to M.:

> "Proposition made by me to Mr. McDaniels:—I hereby agree to give up the banking business in Atlantic to Mr. McDaniels, and the best lot he can pick now in our town, providing he will now build upon the same, and become a permanent resident of our county, and take $16.50 per acre for the farm of three hundred and seventy-one acres, in sections 33, 34 and 28 of township 77, — 36, as marked blue on his plat, and give up to said McDaniels my chance of purchasing the two forty-acre lots of which Judge Temple is acting as agent. This proposition is not a standing one, but to be decided within two days from date. "F. H. WHITNEY."

*Held*, that this was a proposition to enter into two distinct contracts; and that the offer to sell the farm and "give up my chance of purchasing the two forty-acre lots," was a simple, entire proposition, severable from the rest of the instrument, and became a contract entitling M. to specific performance upon the payment of $16.50 per acre for the farm.

### II. PER COLE, J., AND MILLER, J.

2. **Contract:** DIVISIBILITY. The proposition of W. to M., above set out, is a proposition to enter into a single, entire contract.

3. ———: SPECIFIC PERFORMANCE. Specific performance of a contract will be refused, and the party left to his remedy at law:
   1. When there is uncertainty, ambiguity, or doubt respecting the contract:
   2. When there is no clear, or well defined and adequate consideration appearing upon the contract itself, or otherwise shown to exist.

*Appeal from Cass District Court.*

WEDNESDAY, DEC. 17.

ACTION in Chancery to enforce the conveyance of certain lands to plaintiff, the legal title of which is in defendant. Upon the final hearing, the relief prayed for in the petition was granted; Defendant appeals.

*Withrow, Gatch & Wright* for appellant.

*Nourse & Kauffman, Sharp & Hanna* for appellee.

BECK, CH. J.—The plaintiff's claim for relief is based upon the following state of facts: Plaintiff being desirous of purchasing lands in Cass county, entered into negotiations with defendant for that purpose. At that time the defendant held the title of 371 acres of land near the town of Atlantic, and was negotiating for the purchase of another eighty acre tract contiguous or near to the tract owned by him. He also owned certain lots in Atlantic and was doing a banking business there. Plaintiff was willing to purchase the tract of land first named, in case he could also acquire the eighty acre tract, upon which was an eligible building site. He also contemplated entering into the banking business in Atlantic and building a house in the town. As a result of the negotiations between the parties, the defendant executed and delivered to plaintiff an instrument of which the following is a copy:

"WHITNEY'S REAL ESTATE AND SURVEYING OFFICE,
OF CASS COUNTY, IOWA.
ATLANTIC, March 2d, 1869.

Proposition made by me to Mr. McDaniels: I hereby agree to give up the banking business in Atlantic to Mr. McDaniels, and the best lot he can pick now in our town, providing he will now build upon the same and become a permanent resident of our county, and take $16.50 per acre for the farm of three hundred and seventy-one acres, in sections 33, 34, and 28, of township 77–36, as marked blue on his plat, and give up to said McDaniels my chance of purchasing the two forty-acre lots of which Judge Temple is acting as agent. This proposition is not a standing one, but to be decided within two days from date. F. H. WHITNEY."

Before the expiration of the time for which the proposition was to run as therein fixed, viz: on the 4th of March, plaintiff paid defendant $400, and executed a promissory note, due in ten days, for the balance of the purchase money of the 371 acres of land, at the price mentioned in the proposition.

Defendant executed a bond for a deed to be executed for the land upon the payment of plaintiff's note at maturity thereof and made and signed the following supplement to the proposition: "This contract is continued in force for ten days.— F. H. WHITNEY." At the same time there was paid upon the contract $33.35 and the following receipt, written thereon or added thereto, was executed by defendant: "Received of John McDaniels, $33.35 hereon.—F. H. WHITNEY." At the expiration of the ten days, the promissory note of plaintiff was paid and defendant executed a deed for the 371 acres of land. The agent of the owner of the eighty acres of land, with whom defendant was negotiating was notified by plaintiff of the arrangement in regard thereto between himself and defendant and defendant also directed him to let plaintiff have the land. In May following this agent received from the owner a deed in blank and advanced him the purchase price agreed upon, and afterward received that sum from defendant and filled up the deed with his name and delivered it to him. Plaintiff has demanded a conveyance of the land to himself and has offered to pay defendant the amount paid by him for the land.

A large mass of testimony was introduced by the parties and is found in the abstract, much of which is incompetent and more unnecessary in order to determine the rights of the parties under the instrument and facts above set out. As to these facts there can be no dispute.

In order to arrive at a conclusion upon the question as to the right of plaintiff involved in the case, it is important 1. CONTRACT: first to consider and determine the effect of the divisibility. instrument executed by defendant. In our opinion it was, in its original shape, a proposition to enter into two distinct and divisible contracts. See 2 Parsons on Contracts, 517 and notes. The first one to give up the banking business in Atlantic and to convey a lot of the character indicated, in consideration plaintiff should become a permanent resident of Cass county, and build a house upon the lot to be conveyed. Here is one of the proposed contracts and the consideration upon which it is to be based.

The instrument contains a proposition to enter into another contract, namely, to convey 371 acres of land and "give up" defendant's "chance" of purchasing certain other lands. The consideration for this proposed contract is $16.50 per acre for the 371 acres of land. That defendant proposed to sell the 371 acres and relinquish his opportunity or "chance" of buying the eighty acre tract there is no doubt; and it is equally plain that these two acts were coupled together in the proposition. The consideration therefor was to be the $16.50 per acre for the 371 acres. Now this proposition was accepted on the 4th of March by the payment of $400 by plaintiff and the execution of a bond by defendant for the land, the title of which was in him. It then became a contract and by the express agreement of the parties, witnessed by the supplemental writing, was to be binding for ten days upon defendant; that is, plaintiff was to have ten days in which to perform his contract and during that time defendant was bound by it. Before the expiration of the ten days plaintiff paid the amount of the money fixed by the terms of the contract and defendant executed a deed for the 371 acres of land. Plaintiff fully performed his part of the contract; therefore its obligation is fastened upon the defendant. He has not fully performed his part for he did not "give up his chance" to the eighty acres of land. He in good faith was bound to carry out his undertaking. He could not after the contract acquire the land, for the purport and intention of the contract are, that plaintiff may acquire it and defendant shall do nothing to defeat him in its acquisition. But defendant did violate this contract; he did himself acquire the land. Equity will enforce his solemn obligation and require him to place plaintiff in the position he would have been in if the defendant had in good faith kept his contract. In that case plaintiff would have become the owner of the land. No objection exists to this relief on the ground of the delay of plaintiff in endeavoring to obtain a deed for the land. Defendant made no objection thereto before he acquired the title and gave no notice which would have demanded haste on the part of plaintiff. In fact defendant without notice to or demand upon plaintiff

took the deed from the agent of the owner of the land without any delay. Good faith required him, instead of pursuing this course, to notify plaintiff of the fact that the deed could be obtained.

It is proper to remark here that the receipt of the $33.35 indorsed on the contract is claimed by defendant to be payment upon the town lot; plaintiff claims that it was payment upon the contract generally. Whichever statement of fact be true, the conclusion we reach is the same. It is based upon the view we take that the contract is divisible and that, as to the eighty acres of land, plaintiff has fully performed his part. The facts we have above stated are amply established by the evidence. Our construction of the contract is in harmony with these facts and the intention of the parties as shown by their situation, surroundings and other circumstances which we are authorized to consider in order to discover such intention.

The District Court, by proper decree directed defendant, upon receiving the amount he had expended in the purchase of the land, to convey the same to plaintiff. No objections are made to the form or terms of the decree. It ought therefore in my opinion to be                    AFFIRMED.

DAY, J.—I concur in the construction placed by the Chief Justice upon the proposition of Whitney to McDaniels. An agreement is divisible when it embraces several undertakings,

1. CONTRACT: divisible. each supported by a distinct consideration. If one should agree to sell his horse for $200, his harness for $50, and his buggy for $400, he might upon the delivery of the horse sue for, and recover the price agreed upon, although he had not delivered the harness and the buggy. And this he might do although the undertakings were all included in one instrument, and connected by the copulative conjunction.

The proposition under consideration contains an offer to do certain things under certain conditions. Whitney offers to give up his banking business in Atlantic to Mr. McDaniels, and to give him the best lot he can pick in the town. But this he does not agree to do unconditionally. To his proposition he attaches a proviso. *Providing he will now build upon*

*the same, and become a permanent resident of the county.*

When he does so build and become a permanent resident of the county, then the contingency has happened upon which he was to become entitled to the banking business and lot, for the only proviso, qualification or condition named upon which this offer depends, is that he shall become a resident of the county, and build upon the lot. It is just as though he had said, I will give up my banking business to McDaniels, and give him a lot, if he will become a permanent resident of the county and build on the lot. We have here, therefore, a distinct offer, to which is attached a separate and independent consideration. And when the agreement, containing this distinct component part, is accepted by the other party, this portion of it may be enforced, without reference to the other parts, just as much as the sale of the horse, in the illustration before made.

The proposition further contains an offer to take $16.50 per acre for the farm of three hundred and seventy-one acres, and give up the chance of purchasing the two forty-acre tracts, of which Judge Temple is acting as agent.

Should it be said that there is just as much warrant for dividing this into two contracts, as for separating it from what precedes, the obvious answer is that the two things here proposed are not supported by separate considerations, so that the reason for dividing into two agreements, does not exist for separating into three.

Should this portion of the offer be divided into a proposition to sell the three hundred and seventy-one acres, and a distinct proposition to give up the chance of purchasing the two forty-acre tracts, the latter offer would be without consideration. Now the very fact that such a division would cause a part of what is proposed to be without consideration, is conclusive that the propositions have not distinct considerations, and therefore, that they are not divisible.

There is, therefore, to my mind good warrant for holding that the offer to sell the three hundred and seventy-one acres, and to give up the chance of purchasing the eighty acres, is an entire proposition, and is severable from the offer respecting the banking business and the lot.

Entertaining these views, and concurring in the other conclusions of the foregoing opinion, I think the judgment of the District Court should be                AFFIRMED.

COLE, J.—The only question in this case arises upon the construction of a proposition or contract. The testimony discloses the following facts respecting the subject matter of, and surroundings of the parties to, the alleged contract. The plaintiff was a resident of the state of Pennsylvania, and contemplated a removal to Atlantic, Iowa, for the purpose of carrying on a banking business in connection with his son, who was to come with him, and also himself to engage in farming. The defendant was a banker, and was also the owner of a farm near to, and many town lots in, Atlantic; he was also, at the time, negotiating with the agent of the owner of the land in controversy, for its purchase. One or more interviews between the parties resulted in the following proposition or contract:

"WHITNEY'S REAL ESTATE AND SURVEYING OFFICE } ·
    OF CASS COUNTY, IOWA,                       }
            ATLANTIC, March 2d, 1869.           }

Proposition made by me to Mr. McDaniels: I hereby agree to give up the banking business in Atlantic to Mr. McDaniels, and the best lot he can pick now in our town, providing he will now build upon the same, and become a permanent resident of our county, and take $16.50 per acre for the farm of three hundred and seventy-one acres in sections 33, 34 and 28 of township 77, — 36, as marked blue on his plat, and give up to said McDaniels my chance of purchasing the two forty-acre lots of which Judge Temple is acting as agent. This proposition is not a standing one, but to be decided within two days from date.                        F. H. WHITNEY."

On the morning of the fourth day of March the plaintiff left Atlantic for his home in Pennsylvania, and left the matter of consummating the contract with two of his relatives, Jacob and H. F. Andrews, as his agents, and with whom he also left about four hundred dollars in money. On that day, and within the two days specified, the agents called on the defendant, and after some considerable discussion, they paid him four hundred dollars on the proposition, and also thirty-three dollars and

thirty-five cents, and took his bond for title to the three hundred and seventy-one acres, upon the payment, within ten days, of the balance of the consideration for the land, and also obtained from defendant the following indorsements on his proposition:

"This contract continued in full force ten days from date.
                                        "F. H. WHITNEY."
"Received of John McDaniels $33.35 hereon.
                                        "F. H. WHITNEY."

On the fifteenth day of March, and within the ten days, the plaintiff, by his agents, caused to be paid to the defendant such sum in money and exchange, as with the four hundred dollars made the stipulated price for the farm of three hundred and seventy-one acres; and the defendant, by the direction and request of the said agents, executed a deed therefor to a Mrs. L. C. Flint.

No other act was ever done by the plaintiff towards performing any portion of the conditions of the proposition, except that he obtained from defendant before the farm was was conveyed, an order or direction to the agent to have the two forties conveyed to the plaintiff, and made two applications to the agent for the same; but the agent had not then received the deed. Afterward and about the middle of May, 1869, the agent having had the deed about a week, without being applied to for it by the plaintiff, filled in the name of the defendant as grantee, and delivered the same to him upon his paying the agreed price therefor, $800. This action was commenced January 23, 1870.

These facts are not shown and would not be admissible for the purpose of altering or varying the contract itself; but only for the purpose of enabling the court to comprehend the situation of the parties, as respects the subject matter of the contract, in order to determine more unmistakably, its true construction. The entire case, then, depends upon the construction of the contract or proposition.

And the first and important inquiry is, whether the contract is an entire and single one, or is divisible into two or more. To determine this, we must, of course, primarily look to and

be governed by the *language* of the instrument itself. And here, it will be noticed that it begins, "*proposition* made by me to Mr. McDaniels;" not "propositions made by me;" and it also concludes with the expression "this *proposition* is not a standing one, etc." The singular, "proposition," is used both in the opening and concluding sentences. The fact that it was thus twice used, mades it quite apparent that it was not carelessly or unintentionally used; and seems to be very strong, if not wholly conclusive evidence, that the parties then regarded it, as a single and one entire proposition.

*(margin note: 2. CONTRACT: divisibility.)*

The proposition, while single in itself, yet contains an agreement on the part of Whitney to do four things, each of which is separated from the preceding only by a comma, and is connected with the preceding, by the copulative conjunction "and." Mr. Whitney by his proposition says—"I hereby agree to give up the banking business in Atlantic to Mr. McDaniels, and the best lot he can pick now in our town, * * * * * and take $16.50 per acre for the farm of three hundred and seventy-one acres, * * * * * and give up to said McDaniels my chance of purchasing the two forty-acre lots." There is no division of this proposition into sentences, nor any specification of the consideration the proposer is to receive for each of the four things he proposes to do. The price per acre for the land is specified; but whether such price is above or below its real or market value does not appear, either in the proposition itself or in the evidence in the case. It may have been much above its value, and, in the contemplation of the parties, equalized by the chance of getting the two forty-acre tracts. Or, it may have been much below its value, and, in the estimation of the parties, compensated for in taking the banking business with its burdens of doubtful securities. At all events, there is nothing in the proposition itself which specifies the consideration to be paid to the proposer for each of the four things he agrees to do; nor, for any one of them.

The proposition further shows that it was not binding at once and in any event, upon the proposer, Whitney; but it was

to be and would become binding upon him, only when it should be accepted by McDaniels. What was McDaniels to do, in order to accept it and make it binding upon Whitney? He was to pick the best lot, and to build upon it and take the banking business, and become a permanent resident of the county, and pay $16.50 per acre for the farm, and take the chance of purchasing the two forty acre lots. He was to do all these, before Whitney would become bound to him to do what he had proposed. McDaniels could not elect to take the banking business alone, and require Whitney to give it up. This is too clear to require demonstration. And, if he could not do this, it is just as clear that he could not require Whitney to do any other one of the several things proposed without also himself doing all he was required to do by the proposition. And, from this, it must appear that the contract is no more divisible into two parts than into four.

But, this construction of the proposition upon the language of it, finds strong support in the evidence produced by the plaintiff himself on the trial in the District Court. H. F. Andrews, who was one of the relatives and agents of the plaintiff, and entrusted with the consummation of the contract, and who was one of the attorneys for the plaintiff in this case, and became his witness, testifies in chief as follows: "Plaintiff instructed us in particular *not to make any part of the purchase*, as mentioned in the proposition, *unless we took the whole of it*. Defendant sought to vary the proposition with us, but we told him unless he complied with it, we would send the money we had received from plaintiff back to him, and not take any part of the lands or banking business. * * * We told him unless we could have *the whole as mentioned in the proposition*, we would not take the farm or any part of the property." The other relative, agent, attorney and witness, Jacob Andrews, testified in chief for plaintiff, as follows: "I then went to defendant, showed him the proposition, and asked him if he was willing or felt disposed to fulfill his obligations. * * * He remarked that he expected the money down, but would make another offer; and that was, that he would deed the farm of three hundred

and seventy-one acres, and keep back the lot in town, the bank-. ing business, and two forty-acre lots that he had authorized the agent to procure as stated in the proposition. I told him I would not do any thing about taking any of it *unless I had the whole;* that I would make the amount of the forfeiture, (referring to the $400 left by plaintiff,) a little larger from my own funds, if that would be any object." These witnesses tes-. tify that this conversation occurred on the 4th of March, at the time of, and before they procured from Whitney his agreement, and the indorsement that the proposition should be· extended ten days.. *Then*, the plaintiff, by his agents and attorneys, as they themselves swear, insisted that the contract was single and entire, and under such construction they. obtained an extension of it. *Now*, since the plaintiff has failed to perform on his part, they insist that the contract was divisible, and that the plaintiff may require the defendant to perform a part of it; and this in the face of, and directly contrary to the construction placed upon the contract, when the extension was obtained, by reason of which alone the plaintiff can claim any right under it. Surely this cannot be done in a court of equity.

If there was any doubt about the construction of the contract, the previous interpretation placed upon it by the parties themselves, would and should solve that doubt so as to sustain such interpretation. Further than this, it is a well settled

3. ——: spe- rule in equity, that specific performance will not cific per-
formance. be granted when there is uncertainty, ambiguity, or doubt respecting the contract. See 1 Story's Eq. Jur., § 767, and cases cited; 1 Lead. Cases in Eq., (3d Am. Ed.), 726, 740, (top paging); 4 Bouv. Inst., § 3881; 3 Pars. on Cont., 354, and cases cited; *Colson v. Thompson*, 2 Wheat.. 336, (4 Curtis, · 126); *Olive v. Dougherty*, 3 G. Greene, 371. The utmost that can be said in favor of plaintiff's claim as to the construction of the contract, is, that there may be doubt whether it is divisible. But this will not, even if conceded, justify a court of equity, under the above rule, in granting a specific performance. And, in the mind of the writer hereof, there is no room for doubt as to the true construction of the contract involved

in this case. But if it should be even conceded that there is only a reasonable doubt that the true construction is that the proposition is divisible, then a specific performance should not be decreed, but the party should be left to his remedy by action at law. In the case of *Colson v. Thompson*, 2 Wheaton, 336, it was *held*, as correctly stated in the head note, " that in order to obtain a specific performance of a contract, its terms should be so precise as that neither party can reasonably misunderstand them. If the contract be vague and uncertain, or the evidence to establish it be insufficient, a court of equity will not enforce it, but will leave the party to his legal remedy." And in a recent English case, it was held by the Master of the Rolls, and his judgment was affirmed on appeal, that when one of the parties to a contract proves that he understood the agreement in a different sense to the other, the court will refuse to decree a specific performance of the agreement, although it was considered that a fair construction of the agreement, which was in writing, when taken by itself, was as claimed by the plaintiff, *Wycombe R'y Co. v. Donnington Hospital*, 1 Chancery Appeal Cases, 267. In entire accord with this is the declaration and ruling made by this court in *Rudolph v. Covell*, 5 Iowa, 525, that although specific performance may be decreed upon the discretion of the chancellor alone, and may therefore be within the lawful power of the court, yet it is always desirable to make the least draft, which is possible, upon this undefined power of discretion, and to determine causes upon established rules.

And there is still another and further ground upon which specific performance may well·be refused. It is this: there is no clear or well defined and adequate consideration appearing upon the contract itself nor otherwise shown to exist. The necessity for a full and adequate consideration, in order to justify a court of equity in decreeing a specific performance, is too well recognized and settled to require authorities to support it. There are many cases illustrating the rule: The case of *Dodd v. Seymour*, 21 Conn., 475, is quite analogous to, though a much stronger case for the plaintiff than the case under our present consideration. In that case the agreement,

McDaniels v. Whitney.

which was duly executed by both parties and delivered, was as follows: "We, the subscribers, agree to lay out a road running from Washington street, eastward, to intersect a new road laid out by Horace Seymour; said road is to be fifty feet in width, and the north line to start from the south end of James Dodd's corn house, and taking fifty feet from the south end of said Seymour's lot; and said Dodd is to deed to said Seymour twenty feet of land on the east side of his lot, running from the south end to the north, adjoining the said Seymour; and the road is to be laid out, and fenced the coming fall. July 10, 1842." (duly signed.) The court below decreed a specific performance, and therefrom Dodd appealed. The Supreme Court reversed the decree and *held* that "it does not appear that the laying out of the road was, in any way, the inducement to this promise, or that it was such a special benefit to the defendant, or injury to the plaintiff, as to constitute a legal consideration. A court of equity is not bound to compel a specific performance of a contract, even fairly made, and upon such legal consideration as would be sufficient to support it, in an action at common law. A consideration must not only exist, but it must be adequate to induce a court of equity to decree a compulsory performance; and the contract must be so explicit as not to leave the court to conjecture." This case is not only analogous to, but must be decisive of the one under consideration. It is much easier "to conjecture" that Dodd agreed to deed to Seymour twenty feet of land on the east side of his lot, in consideration of Seymour's furnishing the whole of the fifty feet in width of land for the road, than "to conjecture" what consideration the defendant in this action was to receive for giving up his chance of purchasing the two forty-acre lots.

We have given to the case the most careful examination, and to the questions involved, quite an extended investigation, and are not able to find any sufficient basis to support the judgment of the District Court. The delay in bringing the suit is another fact, which of itself should have great weight in leading to the same conclusion. The judgment I think ought to be                REVERSED.

In this opinion MR. JUSTICE MILLER concurs.