ELIZABETH N. DITSON, Appellee, v. JESSE DITSON, et al., Appellants.

1. **Ante-Nuptial Contracts:** CONSTRUCTION: RELEASE OF DOWER: A widower at the age of sixty-four years, having four sons of ages ranging from ten to eighteen years, and owning a farm and considerable personal property, preceding his marriage to the plaintiff, entered into an agreement with her, whereby he was to retain full control of his estate, both real and personal, and the plaintiff was to receive as a legacy the sum of one thousand dollars, with the addition of one hundred dollars for every year her husband lived after the period of eight years from the date of said marriage. The plaintiff agreed to accept the sums named as "her full dower in the estate" of her prospective husband, and that when paid the same should be "in full for services rendered, as well as for dower in said

estate." At the time of her marriage the plaintiff was a school teacher, was thirty-two years of age, and owned only the sum of one hundred dollars, and a few articles of personal property of little value. At the time of his death her husband was possessed of personal property valued at from eighteen to twenty-five thousand dollars, and owned a farm and other property. The plaintiff, however, accepted the sum provided for in the above contract as in settlement of her interest in her husband's estate, expressed herself as being satisfied therewith, and made no claim to any further interest in said estate until about a year afterwards. *Held,* that the word "dower" as used in the above contract included all interest of the plaintiff in her husband's estate, both real and personal.

2 ———: ———: RIGHT TO HOMESTEAD AND EXEMPT PERSONAL PROPERTY. At the time of her acceptance of a settlement under the above contract the plaintiff, in consideration of one dollar, executed to one of the sons of her husband a quitclaim deed to all of the decedent's real and personal property, and accepted from him a life lease of said estate, and a part of the personalty. Afterwards the plaintiff, desiring to surrender the said lease, an agreement was made whereby, in consideration of the cancellation of said lease, and the surrender of said real and personal property, the lessor was to pay her the interest upon one thousand dollars as annuity. *Held,* that the plaintiff was estopped from claiming any interest in the exempt personal property of her husband's estate, and that her acts amounted to an abandonment of the homestead.

*Appeal from Lee District Court.*—HON. J. M. CASEY, Judge.

WEDNESDAY, MAY 18, 1892.

ACTION in equity to set aside a deed, and for a distributive share of the property of Lyman Ditson, deceased, and for other relief. There was a judgment and decree for the plaintiff, from which the defendants appeal.—*Reversed.*

*J. D. M. Hamilton* and *A. H. Stutsman,* for appellants.

*Casey & Stewart* and *Joseph M. Beck,* for appellee.

KINNE, J.—In 1888, Lyman Ditson died intestate in Lee county, Iowa, seized in fee of one hundred and

forty acres of land. The plaintiff is his widow. She avers that, as such widow, she is entitled to the possession of the decedent's homestead; that on March 13, 1888, the defendants, through their agent, Jesse Ditson, procured her to execute a quitclaim deed, conveying to them all the real estate above mentioned; that said deed was procured by threats, and was not her voluntary act and deed; that she was, through grief, prostrated, and not in a fit mental condition to transact any business, and that the defendants refused her the privilege of counseling with an attorney; that the conveyance was also without consideration, and is void. She asks that the deed be set aside, and that she be decreed entitled to the homestead and life estate in said realty.

The defendants deny that the plaintiff is entitled to the possession of the homestead, admit the execution of the deed to Jesse Ditson, deny that the same was procured by threats, and aver that she executed it freely, voluntarily, and for a valid consideration, and that she was in condition to transact business. They deny that they prevented her from seeing an attorney. They also aver that Lyman Ditson, prior to his marriage with the plaintiff, whose maiden name was Elizabeth Rogers, on October 13, 1873, entered into an ante-nuptial contract whereby all property questions were settled between them, and providing therein that each of the parties, after the marriage and during the lifetime of both, were to have control of their individual estate, and to control, sell, and dispose of it as each might deem proper, also providing that the plaintiff should receive a legacy out of his (Lyman Ditson's) estate of one thousand dollars, with the addition of one hundred dollars each year after eight years from said marriage (if said Ditson be then living), as long as he lived after eight years from said marriage, to be first paid out of his estate, which the plaintiff accepted in full as her

dower in and to his estate; that said contract was duly recorded; that, in accordance with the terms of said contract, the defendants, on March 13, 1888, settled in full with the plaintiff on the same, paying her sixteen hundred and twenty-seven dollars and eighty cents, and in pursuance thereof, and of a further consideration of one dollar, the plaintiff executed to Jesse Ditson her quitclaim deed to all of the decedent's real estate, as well as personalty; that on March 13, 1888, the plaintiff desiring to remain upon said real estate, the defendant executed and delivered to her a life lease of the said real estate and a portion of the personalty for the term of her natural life, on consideration that she pay taxes, keep fences and improvements in repair, and remain the widow of the deceased, and occupy the premises as a home. That afterwards the plaintiff desired to cancel and surrender said lease, and a further agreement was entered into whereby the defendant Jesse Ditson executed a bond to her to pay her the legal rate of interest in Kansas on one thousand dollars as an annuity; and that in consideration for the surrender of said real estate and personal property, leased to her as aforesaid, and the cancellation of record thereof; that said bond is valid. The defendants, Allen Ditson, Peter Ditson and John Ditson, answering for themselves, say that Jesse Ditson now owns all the interest in the real estate and personalty.

The plaintiff filed an amendment averring that the deceased, at the time of his death, possessed eighteen thousand dollars in personal property, and that she, as a widow, was entitled to one-third thereof as her distributive share, and states that all of said personal property has been converted by the defendants to their own use; that she was induced to execute the deed by threats, undue influence and fraud. Replying to the defendant's answer, the plaintiff admits the execution of the ante-nuptial contract; denies its legal effect as

claimed by the defendants; claims that under it she became entitled upon the death of her husband to one-third of the personalty; that, the defendants having converted it, she claims a lien for it upon the real estate. She admits that the defendants paid her one thousand, six hundred and twenty-seven dollars and eighty cents under said contract, but denies a settlement in full thereunder, and says said payment was simply in lieu of her distributive share in the realty of the deceased; admits the execution of the quitclaim deed and lease, and avers that they were procured by fraud, undue influence and intimidation of the defendants; admits the cancellation of the lease and the execution of the bond, but avers she never accepted the bond. In an answer to the plaintiff's amendment to her petition, the defendants say they deny each allegation. therein. The district court set aside the deed, lease and bond; found plaintiff entitled to a homestead right, to five hundred dollars for exempt personal property, and to her distributive share of the deceased's personal property; and made the aggregate sum, viz: five thousand, six hundred and thirty-nine dollars and twenty-two cents, a lien upon the real estate, and ordered execution to issue. The defendants appeal.

I. This appeal raises for our consideration the plaintiff's right to recover her distributive share of the personal property of Lyman Ditson; her right to recover, occupy, and enjoy the homestead, and her right to recover for personal property exempt from execution. It is clear that the plaintiff's rights largely depend on the construction which may be given to the ante-nuptial contract. The following is the material part of it.

1. ANTE-NUPTIAL contracts: construction: release of dower.

"That, upon the marriage of said parties, said Elizabeth Rogers is to have full control and management of all the property belonging to her at the time of said marriage, said Ditson to have full control of his estate, both real

and personal, to sell, convey and dispose of the same as to him may seem proper during his life, and neither party will be bound for the payment of the debts or the contracts of the other, except those for the general use of the family, for which said Ditson shall be liable, and in consideration of the performance of the duties as the wife of said Ditson by said Elizabeth Rogers, during his life, she will be entitled to receive as a legacy the sum of one thousand ($1,000) dollars, with the addition of one hundred ($100) dollars each year after eight years from said marriage (if said Lyman Ditson be then living), as long as he lives after said eight years from said marriage, to be first paid out of said Ditson's estate after his death, which the said Elizabeth Rogers agrees to accept as her full dower in the estate of said Ditson, which, when paid, shall be in full for services rendered, as well as for dower in said estate. All other relations and obligations existing between said Ditson and said Elizabeth Rogers, as husband and wife, shall be as the law provides. This contract to take effect and be in force from and after the marriage of said parties to each other.''

The defendants contend that under this contract the plaintiff is barred from all interest in Lyman Ditson's estate, real or personal, except the legacy provided for therein. The plaintiff, on the other hand, insists that the word "dower," used therein, indicates that the plaintiff simply surrendered her right to an interest in the lands of her husband after his death. It is claimed that because the estate of "dower" is abolished in this state, and the widow's interest in the real estate of her deceased husband is called her "distributive share," that that was evidence that the parties had not used the word with reference to an interest in real estate alone. Code, sections 2440, 2441. We think this contention is entitled to but little weight. It will be observed that the word "dower," as applied to the share of the widow in her

deceased husband's real estate, was dropped from the statute September 1, 1873, and there was substituted in lieu of it the provision for her distributive share in the lands of the estate. The contract in controversy was made October 13, 1873, but a few days after this change in the statute. It cannot be successfully claimed that in this brief period the word "dower" had acquired any other meaning, in a popular sense, than it had previously, and certainly, in a legal sense, it had never had reference to anything except an interest in real estate. Black, Law Dictionary, p. 393; 5 American and English Encyclopedia of Law, p. 884; Webster's Dictionary, tit. "Dower." In referring to the abolition of the use of the word "dower," the court in *Mock v. Watson*, 41 Iowa, 244, says: "Whatever effect the legislation abolishing the estate may have had upon the interpretation of the different provisions relating thereto, it is quite certain that the use of the word will not be dispensed with." Since the enactment of the present statute, this court has often used the word "dower" to designate the interest which the law gives the widow in the lands of her deceased husband. *Rausch v. Moore*, 48 Iowa, 611; *Mock v. Watson*, 41 Iowa, 241; *Daugherty v. Daugherty*, 69 Iowa, 677; *Foley v. Kane*, 53 Iowa, 64; *Parker v. Small*, 55 Iowa, 733; *Kendall v. Kendall*, 42 Iowa, 464; *Dunlap v. Thomas*, 69 Iowa, 358; *Craig v. Conover*, 80 Iowa, 358; *Steel v. Bank*, 79 Iowa, 347; *Gilman v. Sheets*, 78 Iowa, 500, and many other cases.

It is said in *Field v. Schricher*, 14 Iowa, 122: "And while it is true, as claimed by the appellants, that, in construing a paper, we are to look to the paper itself, and cannot look to surrounding circumstances, to make that uncertain which is plain, it is equally true that what a contract means is a question of law; that in giving it a construction the first point is to ascertain what the parties meant.  *  *  *  The subject-matter

of the contract is to be fully considered. Equally important is it to know the situation of the parties and of the property, as also the purpose of the parties in making the contract, for the purpose and intention will be carried into effect, so far as the rules of language and law will permit." *Jacobs v. Jacobs*, 42 Iowa, 605. So, too, the interpretation placed upon the contract by the parties thereto must be considered. *McDaniels v. Whitney*, 38 Iowa, 70. In *Corbett v. Berryhill*, 29 Iowa, 160, it is said that the intention of the parties as to the true interpretation of the contract will be followed unless violence is thereby done to the rules of language or of law, and such intention "may be ascertained by evidence of extrinsic circumstances which surround the transaction." *Conwell v. Humphrey*, 9 Ind. 135; *McCraney's Ex'r v. Griffin*, 13 Iowa, 313; *Karmuller v. Krotz*, 18 Iowa, 352; *Brown v. Slater*, 16 Conn. 192; *Fowle v. Bigelow*, 10 Mass. 379; 2 Parson on Contracts pp. 631–633. And it is held, in construing this class of contracts, the true intent of the parties will be carried out literally, regardless of the strictly technical meanings of the words used. 14 American and English Encyclopedia of Law, p. 550. In *Brown v. Ransey*, 74 Ga. 210, the court announced the rule that such contracts are to be liberally construed to carry into effect the intention of the parties, and no want or form of technical expression will invalidate them; that the intention of the parties is the cardinal rule of construction; that attendant and surrounding circumstances may always be resorted to, and proof of local usage or understanding of words is held admissible to arrive at the meaning of the parties.

Applying these rules of law to the contract in controversy, we hold that the legacy provided for the plaintiff therein was intended to cover all her interest in the decedent's estate, both real and personal. Let us look at the circumstances surrounding the execution

of this contract.    The deceased was at that time sixty-four years old.    He had four sons, aged from ten to eighteen years.    He was the owner of a large farm, unincumbered.    He must have had a large amount of personal property, as fifteen years later, at his death, he had personalty variously estimated at from eighteen thousand to twenty-five thousand dollars, still had one hundred and thirty-eight and one-half acres of land, two town lots, and in the mean time had advanced·to his sons who had left home over seventeen thousand dollars.    All this property he accumulated from his farming operations, which of itself is evidence of his frugality and prudence.    In this condition in life, he looks about for a second wife.    He knew the plaintiff. She had been for years a school teacher, and resided in an adjoining village.    She was thirty-two years old, and.evidently a woman of more than average intelligence.    She had one hundred dollars in cash, and a few articles of property of little value.    It could not, from the nature of things, be expected that the plaintiff could render much assistance to.the deceased in making further accumulation of property.    It was natural that the deceased, having reared a family, all of whom would soon be able to do for themselves, should want to preserve the most of his estate for the benefit of those who had helped to accumulate it.    It is manifest from the wording of the contract itself that the deceased intended to retain control over all of his property.    He reserved the right to sell, convey, and dispose of the same as he saw fit during his lifetime. These provisions retaining in himself, by clear and explicit language, this right of control and disposition "of his estate, both real and personal," during his lifetime, shortly precede the claim in controversy.    He clearly had in mind then both his real and personal estate..    He was speaking of all his property.    Then, after providing the legacy for the plaintiff, the contract

says: "Which the said Elizabeth Rogers agrees to accept as her *full dower in the estate* of said Ditson, which, when paid, shall be in full for services rendered, as well as for *dower in said estate.*" If, however, the decedent only meant by the use of the word "dower" to include real estate, why did he add the words, "in the estate," and "in said estate?" Clearly, under the construction contended for by the plaintiff, such words were unnecessary, and added nothing to the contract. We must, if possible, give effect to all the language used in the contract. It must be presumed, unless there is something to show to the contrary, that the decedent had some intention in the use of these words, as well as in the use of the word "dower." To give them any vitality and effect, they must be held to modify the usual meaning of the word "dower," or rather to give it a more extended meaning,—to apply it to all his estate, real and personal. Bear in mind that but a few lines above he had been speaking of "his estate, both real and personal." In fact, nowhere in this contract has he spoken of his real property except in connection with his personalty. Under the wording of the contract, and in view of all the surrounding circumstances, and the object he was seeking to accomplish, it seems to us but reasonable to say that the word "dower," as used in said contract, in connection with the other language used, was by the parties intended to cover all of the decedent's estate, of whatever character. To so hold works no violence to the intention of the parties, as evidenced from other parts of said contract. Under preceding provisions, already noticed, the deceased might have disposed of all of his property, both real and personal, while he lived. He might have sold it or have disposed of it by will. Taking this contract, and considering it from every standpoint, it seems that the intent and meaning of it was to provide for a legacy to his wife

which should cover all interest she was to have in his estate. It will not do to put the narrow and technical construction on the word "dower" in view of the other language used, and the manifest intent of the parties.

Again, we have seen that the construction put upon the contract by the plaintiff must have some weight if there be any doubt as to the meaning of it. The plaintiff, after her husband's death, had a settlement under the contract with the defendants. The great preponderance of the evidence shows that when she was paid the sum due thereunder, and the life lease executed to her of the home farm, she expressed herself as satisfied, and said it was more than she had expected; that she had Jesse fix it up just to suit her. It appears from her conduct then, as well as some time afterwards, that the claims she now makes were not thought of by her at the settlement and that she then thought she had received more even than she was legally entitled to. These matters are only material as they tend to show the plaintiff's construction of the contract, and hence the intention of the parties at the time it was executed. Not until about a year after the settlement did she change her mind. The case of *Mahaffy v. Mahaffy*, 61 Iowa, 679, and 63 Iowa, 55, is relied upon by the plaintiff, with much confidence, as decisive of the questions involved, arising out of the construction of the ante-nuptial contract. We cannot reach the conclusion that it should have that effect. In that case the contract was materially different from that in the case at bar. In the *Mahaffy Case* the meaning of the word "dower," as used in the contract, was rendered certain by the other words used, "or right of inheritance," and the fact that the right of the wife to an allowance, and to occupy the homestead, not having been acquired by her "inheritance," renders it certain that the contract could not have been intended by the parties to have included an allowance for support, or the

right to occupy and possess the homestead after the husband's death.

II. The conclusion we have reached precludes any recovery by the plaintiff in this case. While we are content to rest the result on the construction we have given to the ante-nuptial contract, we may say there are, to our minds, other reasons which at least bar some of the plaintiff's claims. It is contended by the learned counsel for the plaintiff that she simply leased from Jesse Ditson the homestead and the personal property, and she had a right to hold the former and so much of the latter as she would have been entitled to hold as exempt from execution, without any lease; that there was no sufficient consideration for the quit-claim deed to the homestead; and that when the lease was canceled the parties were put back where they started. We know of no rule of law that would prevent the plaintiff from recognizing Jesse Ditson as her landlord, receiving a lease from him, and afterwards canceling the lease, and for a consideration making him a deed to the premises. This is what she did. In the case of *Mack, Executor, v. Heiss*, 90 Mo. 578, 3 S. W. Rep. 80, where there had been an ante-nuptial contract, and after the death of the husband the wife, without any consideration, executed a deed to the executor, releasing all her right, title, and interest in the decedent's estate, and all demands against the estate, it was held, that it passed the right of homestead. In that case the court said: "Nor is it material, as we think, that she had not agreed in the ante-nuptial contract to release the homestead right, or that she was under no obligations to do so, to entitle her to the payment of such sum out of her husband's estate. The vital question is, has she parted with that right under the said deed? * * * Until the deed is assailed or impeached or avoided for fraud, mistake, or

*Marginal note:* 2. right to homestead and exempt personal property.

other reasons, which was not sought to be done in this action, it must, we think, be held effectual to pass the title.'' In the case at bar, the plaintiff entered into a contract with the defendants whereby she leased the decedent's land and the personal property. She thereby recognized that she had no legal right to the use or occupancy of the homestead. She voluntarily parted with it, as well as with the exempt personalty. She also, by the terms of the lease itself, conceded the ownership of all the personal property thus leased to be in the defendants. Then at her instance the lease was canceled. She abandoned the homestead, and accepted to some extent the benefit of other provisions which were made for her. She then deeded the land to Jesse Ditson. Surely, after doing all this, she could claim no interest in the exempt personalty, nor the right to use or occupy the homestead. We need not cite authorities to show that, by abandonment of the homestead, it ceases to have that character, and that all rights in and to it as a homestead are forfeited. She brought a suit to have her distributive share in her husband's estate admeasured to her, which of itself was strong evidence of an abandonment of her homestead right.

III. It is contended that the deed executed by the plaintiff was procured by threats, undue influence and fraud, and that, by the same means, she was induced to lease the property; that she was not in a proper mental condition to do business; that the defendants prevented her from seeing an attorney; that the said instruments were unconscionable. We cannot review the evidence relating to these matters. It is voluminous. It is sufficient to say that it does not in any way sustain the plaintiff's contention. There is no question in our minds that she knew just what she was doing when she executed these instruments; that she was satisfied with what she had done until long afterwards, when

she concluded she had not been generously dealt with. We may say that while we think these children could well have afforded to be generous, as well as just, in dealing with the plaintiff, yet it is not within our power to change or set aside contracts made by parties possessing the ability and knowledge to protect themselves, when no fraud or undue influence has been practiced upon them. She knew what she was getting, and, if she made a mistake, she must abide by the consequences.

Several other questions are raised by the defendants, but as what we have said will, in any event, dispose of the case, we need not consider them. The judgment of the district court is reversed, and judgment will be rendered in this court for the defendants, and against the plaintiff for costs. REVERSED.