## W. J. PRATT, Appellant, v. C. C. PROUTY.

**Interpretation of Contracts: EVIDENCE.** The testimony of parties as to how they understood an unambiguous instrument, is inadmissible.

**SAME.** The acts of the parties to a contract, illustrating their understanding of it, may be shown to aid the court in arriving at a proper interpretation.

**SAME.** The proviso in an option for the purchase of enough of the stock of one of the parties in a corporation to reduce his holding to one-third of the whole capital stock, that the stock shall be purchased at par in amounts of ten thousand dollars at the end of each business year, after a dividend has been declared and paid on the stock, will be construed merely to fix that sum as the greatest amount of stock that can be demanded in any one year, especially where the parties have practically so construed it.

**Joint Contracts.** The consent of all the persons to whom an option for the purchase of stock of a corporation, in which they are all interested, is given by an agreement to sell and deliver to them a specified amount of stock, in the number of shares to each that they may agree upon. is necessary to the exercise of the option by any one of them, although one or more of them has disposed of his interest in the corporation.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

SATURDAY, JANUARY 22, 1898.

Action for damages for failure to sell and deliver certain shares of stock. Trial to jury. Verdict and judgment for defendant. Plaintiff appeals.— *Affirmed.*

*Earle & Prouty* for appellant.

*Cummins, Hewitt & Wright* for appellee. ·

WATERMAN, J.—As to many of the facts presented by appellant, there is no dispute. We may state the case in this way: In November, 1888, plaintiff and defendant, together with Isaac W. Aikin and P. H. Skinner, incorporated as the Prouty & Pratt Company, for the purpose of carrying on a whole sale grocery business in Des Moines, Iowa. The capital stock of the corporation was one hundred and sixty-two thousand dollars, divided into three hundred and twenty-four shares, of five hundred dollars each, which were held by the different parties in the following amounts: Defendant, one hundred and sixty-four shares; plaintiff, one hundred and eight shares; Isaac W. Aikin, fifty shares; P. H. Skinner, two shares. At or about the time of the incorporation of said company, an agreement was entered into by defendant, a copy of which is as follows: "Des Moines, Iowa, Nov. 24, 1888. In consideration of one dollar in hand paid, I hereby agree to sell to W. J. Pratt, Isaac W. Aikin, and P. H. Skinner, my associate partners in the Prouty & Pratt Co., enough of the capital stock that I may hold in said Co. to reduce my capital stock to one-third of the whole capital stock in said Co.: provided, said stock is to be purchased by said W. J. Pratt, Isaac W. Aikin and P. H. Skinner at par, in amounts of ten thousand dollars, at the end of each business year of said Co., after a dividend has been declared and paid on said stock; and I further agree to sell and deliver to the above parties the ten thousand dollars stock in the number of shares to each that they may agree upon. C. C. Prouty."

It is claimed by the appellant that the trial court erroneously construed this contract as providing that

plaintiff and his associates, Aikin and Skinner, could call
each year for exactly the amount of ten thousand dol-
lars of said stock,—no more and no less. We are by no
means sure that the record shows the lower court to
have so construed the contract. We are called upon,
however, to give our interpretation of it. It must be
admitted that the ten thousand dollars mentioned in
the contract was a limitation of some kind. Was it
meant to limit the purchaser's rights to exactly ten
thousand dollars worth of said stock, or did it mean
that no less, or that no more, than ten thousand dollars
in amount was to be taken in any one year? Appellant
says it could not have been a restriction to the exact
amount stated, because defendant held twenty-eight
thousand dollars more than one-third of the stock, and
to say that the purchaser could demand only the par-
ticular sum of ten thousand dollars, would be to deprive
him or his associates of the ability to get the whole of the
surplus offered them in this agreement; for, after two
calls, there would remain a sum of but eight thousand
dollars in defendant's hands. He insists that the agree-
ment meant that no less than ten thousand dollars
should be demanded at any one time. But we think this
leaves him in the same dilemma he has stated as arising
from the construction which he says was given by the
lower court. Plaintiff claims to have demanded ten
thousand the first year, and a like sum the second year.
This would leave, under his construction, a remainder of
eight thousand dollars, which could never be obtained.
We suggest that the ten thousand dollars mentioned
was an amount that could not be exceeded; that it was
fixed as the largest sum that could be demanded in any
one year. Let us look at the contract in the light of
this suggestion. One of the first provisions governing

the construction of a written instrument is that it should be interpreted, if possible, so as to effectuate the intention of the parties. When it is ascertained what the parties intended, the contract will be construed so as to carry out that intent, as far as the language employed will admit. To discover the intent, we can consider, not only the written instrument and its subject-matter, but the situation of the parties, and the circumstances surrounding them, at the time the contract was made. *Field v. Schricher*, 14 Iowa, 119; *Jacobs v. Jacobs*, 42 Iowa, 600. This was a unilateral agreement. The defendant was bound to sell. The plaintiff was under no obligation to buy. The price fixed for the stock was its face, or par, value. Plaintiff, of course, would not exercise his option to purchase unless the stock should be worth more than this. The greater the value of the stock, the more of it the plaintiff would naturally want; and, for like reason, the less of it defendant would care to dispose of. Viewing the matter in this light, it is but reasonable to think that defendant would fix a limit to the amount that he was willing to part with in any one year. This construction, we think the evidence shows, is in accord with the understanding of the parties. The best evidence of how the parties to an agreement understand its terms is afforded by their acts under it, and these may be shown in order to aid the court in arriving at a proper interpretation. *Thompson v. Locke*, 65 Iowa, 429. Plaintiff claims that this stock, when he made his first demand, had earned for that year eleven and one-half per cent., net, making it worth a considerable sum above the price he was to pay, and at the end of the second year it had earned net twenty-three per cent.; yet he demanded each time just ten thousand dollars in amount. It is difficult to believe that plaintiff did not try to get all that he considered he was entitled to of the stock that was yielding such handsome returns,

As we have already said, we do not find in the record that the lower court gave the contract the construction alleged by plaintiff. There is nothing in the instructions to indicate that it interpreted the agreement differently from what we do. The instrument does not appear ambiguous in its terms. The rulings of the trial judge excluding the statements of the parties as to how they understood the words they had used, were correct.

We have devoted this much attention to the construction of this agreement because we think, notwithstanding the special verdict which was rendered by the jury, that the plaintiff might have been prejudiced by an erroneous interpretation of the option given by defendant; but we are quite clear that every other question in the case is disposed of by the findings of the jury. In response to special interrogatories submitted, the jury found that plaintiff made no demand for stock at the end of the first year, and that he did not have the consent of Aikin and Skinner to take the stock at the end of the second year. While Aiken had disposed of his stock during the second year, he was still a party to this agreement, and his consent was necessary to give validity to plaintiff's demand. There was testimony to sustain these findings and we have no disposition to interfere with them. For the reasons given, the judgment below will be AFFIRMED.