. HURLEY v. McCALLISTER *et al.*

1. Where a conveyance, in consideration of support, bound the grantee to discharge incumbrances and to pay the grantor an annuity, a voluntary acceptance by the grantor of an annuity, after having served the grantee with a demand for reconveyance, based on a default consisting in failure to discharge incumbrances, constitutes a waiver of such default and of any right of forfeiture arising thereform.

2. A father conveyed property to his son in consideration of the assumption by the latter of mortgages on the premises, the payment of an annuity for the support of the father during his life, and the payment of the expenses of the last sickness and funeral of the father in case he should not have money or property enough to pay the same. No personal services were required of the son, nor was it contemplated that the father should become a member of his family. The contract expressly provided that it was for the benefit of the father, and not for the benefit of any other person, and bound the son, "his heirs, executors, administrators and assigns." The son subsequently conveyed the land, and the father accepted payments of the annuity from the son's grantee. Held, that the son's obligations under the contract would be construed as assignable, especially in view of construction placed on the contract by the parties.

(Opinion filed May 31, 1905.)

Appeal from circuit court, Lake county; Hon. JOSEPH W. JONES, Judge.

Action by John M. Hurley against G. L. McCallister and others. From a judgment for defendant McCallister, plaintiff appeals. Affirmed.

*Joe Kirby*, for appellant.

Where a grant is made upon condition subsequent, and is subsequently defeated by the non-performance of the condition, the person otherwise entitled to hold under the grant must reconvey the property to the grantor or his successors, by grant duly acknowledged for record. Rev. Code Sub. Div. 5 Sec. 947; Ewing v. Wolson, 19 L. R. A. 767; Richter v. Richter, 12 N. E. 698; Knutson v. Bostrak, 75 N. W. 156; Gilchrist v. Foxen, 70 N. W. 585; Watters v. Bredin, 70 Pa. St. 235; Driesbach v. Serfass, 3 L. R. A. 836; Glocke v. Glocke, 57 L. R. A. 458.

*Chas. J. Porter*, for respondent.

A forfeiture may be waived by the party who has a right to avail himself of the breach of a condition by acts as well as by express agreement. Shown Iron Co. v. Erie, 4 Penn. St. 341; Duryee v. City of New York, 96 N. Y. 477.

Where an estate of freehold on condition is forfeited for non-payment of an annuity, the grantor waives the forfeiture by accepting the sum due; and a forfeiture once waived cannot afterwards be claimed. Chalker v. Chalker, 1 Conn. 79.

FULLER, J. To secure maintenance for the remainder of his life and make conditional provision for the expenses of his last illness and interment, defendant, a man, 74 years of age, and no longer able to continue the business of farming, deeded 320 acres of Lake county land to his son, the nonappearing defendant, J. W. Hurley, on the 24th day of December, 1898, pursuant to a written instrument duly recorded, and containing the following provisions: "That said first party hereby agrees to and with said second party that he will furnish, and pay, to

said second party, during the remainder of said second party's natural life the sum of three hundred dollars ($300.00) per year, the same to be paid on the first day of January of each and every year, the first payment to be made on the first day of January, A. D., 1900, and $300 on the first day of January in each year thereafter, as aforesaid; said $300.00 per year to be paid for the support and maintenance of said second party during his natural life. And said first party, for the faithful fulfill-ment of this agreement, hereby binds himself, his heirs, ex-ecutors, administrators and assigns.   *   *   *   And as a fur-ther consideration for said land, said first party assumes and agrees to pay all mortgages and liens now standing against said above described premises, or any part of them. And, in case said first party, his heirs, personal representatives, ex-ecutors, administrators or assigns, shall fail to keep and per-form this contract on the part of said first party then, and in such case, said first party hereby contracts and agrees, for himself, his heirs, personal representatives, executors, admin-istrators and assigns, that he, or they, will, on demand of said second party, after such failure to keep and perform this con-tract on his part, that is on the part of said first party, as aforesaid, execute and deliver to said second party, a good and sufficient warranty deed to all the land hereinbefore described, excepting a mortgage of $800.00 now on a part of said land known as the tree claim. And said second party agrees that, in case said lands shall be at any time redeemed to him pursu-ant to this contract, said first party shall have a lien on the same to secure the payment of said mortgage of $800.00 in case the same shall have been paid, and to secure any and all moneys that he shall have invested in improving said land or

any part thereof, the intention being that the parties hereto shall be placed in statu quo. But said first party shall not have any lien, or be reimbursed for the payment of any mortgages, except said $800.00 mortgage, as all other mortgages and liens have been created by said first party and he has had the benefit thereof. And it is mutually agreed, by and between the parties hereto that, at the death of said second party, this contract shall become null and void and of no further force or effect—it being a personal contract for the benefit of said second party and not intended for the benefit of any other person. Provided, that said first party shall pay the necessary expenses of the last sickness and funeral of said second party in case that he shall not, at the time of his death, have sufficient money or property to pay the same, and also any incidental, or store accounts, which said second party may owe at the time of his death, not exceeding fifty dollars." This action to cancel the foregoing contract and compel a reconveyance of the land to appellant is based on a claim of fraud and conspiracy on the part of respondent, McCallister, and J. M. Hurley, alleged in the complaint as follows: "That on or about the 28th day of July, 1902, the said G. L. McCallister and the said Jerry W. Hurley, unlawfully and fraudulently colluding together, and for the purpose of defrauding and beating this plaintiff out of said property and his interest therein, did enter into an agreement and conspiracy whereby the said Jerry W. Hurley did, by a warranty deed and in writing, purport and attempt to convey, and did, as far as it lay in his power, convey, all of the said property to the said G. L. McCallister. That said Jerry W. Hurley has not performed his part of said contract, Exhibit A, to be by him performed, and has defaulted and

failed so to do, and especially that he has not paid any of said mortgages upon said premises, although the same are several years past due; he has allowed the same to become defaulted, and the owner of each of said mortgages has commenced foreclosure proceedings thereon in the circuit court of Lake county, and has procured judgments of foreclosure of each of said mortgages, and is now advertising said premises for sale under an execution issued in such foreclosure proceedings, and is about to sell said premises, and the whole thereof, the under. That the said G. L. McCallister has fraudulently, and with knowledge of this plaintiff's said right, taken the deed to said premises, and has instructed and urged the owner of said mortgages to sell said property for the purpose of cutting out by said proceedings the claim of this plaintiff, and thereby defrauding and cheating this plaintiff out of said premises and all interest therein."

Although J. W. Hurley neither paid the taxes nor the mortgage indebtedness, and was at times dilatory concerning the amount fixed by the contract as an additional lien upon the land in favor of appellant, such annual payments of $300 had all been made and accepted before the premises were conveyed subject to such burden to respondent, McCallister, who has made all the payments subsequently accruing, or duly tendered the same, to appellant. Therefore no default in paying the stipulated annuity is alleged in the complaint, nor mentioned in appellant's written demand for a reconveyance served upon J. W. Hurley January 1, 1902, and prior to his voluntary acceptance of the $300 accruing under the contract for the preceding year, and by receiving which appellant waived any breach of the contract in that particular. As a matter of fact,

19 S. D.—25

he testified in his own behalf that all the annual payments of $300 had been received by him either from J. W. Hurley or respondent, except the last one due under the contract, which he refused to accept; and the payment of January 1, 1903, is evidenced by a written instrument which, in recognition of respondent's ownership, appellant executed, as follows: "Received from G. L. McCallister, assignee and grantee of Jerry W. Hurley, $300.00 being the payment due as per contract with said Jerry W. Hurley dated December 24th, 1898, payment being for the year 1902 as per said contract. [Signed] J. M. Hurley." It is elementary that by acts as well as by express agreements, a forfeiture may be waived, and in the case of Chalker v. Chalker, 1 Conn. 79, 6 Am. Dec. 206, the prevailing rule governing the proposition here presented is stated thus: "Where there is a forfeiture of an estate of freehold upon condition, for non-payment of an annuity, if the grantor subsequently accept the sum due, such acceptance is in law a waiver of the forfeiture, and a forfeiture once waived can never afterwards be claimed."

The trial court found, in effect, that respondent purchased the premises from J. W. Hurley in good faith subject to appellant's contract, and that he did not urge, cause, or procure the foreclosure of the mortgages with any intent to defeat plaintiff's interest. With reference to the alleged fraudulent conduct of respondent concerning the foreclosure of the mortgages, the court found as follows: "That for the purpose of clearing up the title to the said land from the foreclosure of the said mortgages, the defendant McCallister caused an execution to be issued out of the said clerk's office on the said judgment, in the name of the plaintiff's in said suits, and there

was a notice of sale published thereunder in a paper in the city of Madison, in which the day of sale was set for the 6th day of April, 1903. That said proceedings were thereafter abandoned and stopped before the day of said sale, and said premises were not sold, but said defendant McCallister paid the judgments on the foreclosure and redeemed the same, which payment was made and said judgments satisfied on the records of said Lake county on the 2d day of April, 1902, and before the commencement of this action; and at the time of the commencement of this action all liens and incumbrances against said premises had been paid and satisfied of record by said McCallister, as owner of the said premises." It stands proved that appellant's rights were in danger of divestment by foreclosure proceedings pending to recover the amount secured by the prior mortgages, including delinquent taxes paid by the mortgagee, when J. W. Hurley conveyed the premises by warranty deed to respondent, who promptly did all that J. W. Hurley ought to have done earlier, and whose default appellant had excused by accepting the stipulated annual payment of $300 after demanding a reconveyance as provided for in the contract. Manifestly, these mortgage liens and rights of respondent would merge in the holder of the sheriff's deed, so that by purchasing at the foreclosure sale, as first contemplated, he would obtain no advantage over appellant; and the evidence reasonably justifies the inference that there was never an intention to do anything but pay appellant $300 annually so long as he lives, and comply with the contract of his grantor with reference to the expenses of appellant's last illness, "in case he shall not at the time of his death have sufficient money or property to pay the same." The allegations of fraud and col-

lusion between respondent and J. W. Hurley being thus determined adversely to appellant, the finding of the trial court that G. L. McCallister is the owner of the premises, subject to the contract in question, must be sustained, unless the claim of appellant's counsel is true, that according to the intention of the contracting parties, the obligation of J. W. Hurley to pay the money specified and agreed upon cannot be delegated to another.

Clearly the nature of the transaction and express terms of the contract are repugnant to the suggestions that appellant placed special trust and confidence in J. W. Hurley, or that any personal care or attention was contemplated. In consideration for the deed taken subject to existing incumbrances, then amounting to more than $1,800, the grantee obligated "himself, his heirs, executors, administrators and assigns," to satisfy the same and pay the grantor $300 on the 1st day of January of each year; and, apparently to emphasize the fact that the obligation to pay would terminate with the death of appellant, it was expressly provided that such payments were for his personal benefit, and not for the benefit of any other person. As no personal service or maintenance on the part of J. W. Hurley was required, and appellant was not to become a member of his family, it was entirely consistent and in harmony with the general intention of the parties to bind assignees or grantees of the premises to the performance of every obligation created by the contract; and that its terms were so understood and interpreted by appellant is shown by his conduct and the receipt for the $300 collected by him from respondent, McCallister. That a conveyance of the land subject to the interest of appellant was contemplated by the original par-

ties appears from the terms of the contract by which J. W. Hurley or his assigns are bound to make the annual payments or reinvest appellant with title, and that he so construed the instrument is clear from his subsequent conduct in recognition of respondent's ownership and assumption of the obligation to pay $300 on January 1st of each year. Ordinarily, the interpretation placed on a contract by parties thereto may be safely adopted by the courts. Lawton v. Fonner, 80 N. W. 803; Pratt v. Prouty, 73 N. W. 1035; Hill v. City of Duluth, 58 N. W. 992. In a business like manner, and by a contract as susceptible of performance by a stranger as by J. W. Hurley, appellant guarded his interest against every probable contingency, and insured the annual payments of $300 by an obligation in the nature of a mortgage, which, by the act of respondent in paying over $4,600 of appellant's indebtedness, has become the only lien upon the premises.

The view we have taken renders further consideration of appellant's assignments of error unnecessary.

Finding nothing in the record to justify a reversal, the judgment dismissing the complaint is affirmed.