IN RE ESTATE OF ELLEN T. WHITMAN.

No. 43356.

MARCH 17, 1936.

REHEARING DENIED JULY 31, 1936.

Lehmann, Hurlburt & Hossfeld, for appellant Nellie Whitman Taylor.

Lappen, Carlson & Clarke, for appellee and cross-appellant Mary E. Whitman.

E. D. Samson and Lehmann, Hurlburt & Hossfeld, for appellee E. D. Samson.

ANDERSON, J.—This appeal presents the construction of the will of one Ellen T. Whitman creating a trust estate and questions raised on the reports of trustees and the disbursement of the income of the trust estate.

On June 2, 1919, the will of Ellen T. Whitman was admitted to probate in the district court of Polk county, Iowa. The provisions of the will pertinent to a determination of the issues here presented are as folows:

"Second. I give, devise and bequeath to my daughters, Nellie Whitman Taylor and Mary Whitman, and to Jesse F. Stevenson, in trust, however, for the persons hereinafter designated, during the term defined, with the powers granted, and subject to the limitations and conditions herein imposed, the following described real property in the city of Des Moines, Iowa, namely: [Here is described two separate tracts of real estate situated in the business district in the city of Des Moines, and a certain residence property also situated in the city of Des Moines, Iowa.]

"Third. The duration of the trust period shall be the lives of my daughters, Nellie Whitman Taylor and Mary Whitman."

"Fourth. Upon the termination of the trust period all the property of the trust estate, with accumulations, additions thereto, and accrued income, shall vest in the children of my daughter, Nellie Whitman Taylor and her deceased husband, David Lee Taylor. * * *"

"Fifth. Of the net income of the trust estate one-half shall be paid to my daughter, Mary Whitman, during life, and one-half to my daughter, Nellie Whitman Taylor, during life, provided always, that my daughter, Mary Whitman, shall receive annually not less than two thousand dollars as her portion of the income from the trust estate. The distribution of the net income shall be made monthly, if possible. If my daughter, Mary Whitman, should survive her sister, Nellie Whitman Taylor,

then the share of the net income that Nellie Whitman Taylor would have been entitled to receive, if living, shall, from her death, be paid to the beneficiaries, designated in paragraph numbered 'Fourth', above, who, if the trust were then terminated would be entitled to the vested remainder. And, from then on, until the termination of the trust period such beneficiaries and their lineal descendants shall be entitled to such net income and in the proportion specified in paragraph numbered 'Fourth,' above. If Nellie Whitman Taylor shall survive her sister Mary, she shall be entitled to the entire net income from the trust estate.''

''Sixth. The trustees are authorized and empowered to immediately take possession of all property herein devised to them in trust, and, thereupon and thereafter, to collect the income, rents, and profits therefrom; to pay all necessary and proper charges; to lease any or all of the properties of the trust estate for such term, and without limitation as to time, as may seem best to them; to make repairs, alterations, and additions, or to erect new buildings. They are also authorized and empowered to sell and to convey, and to mortgage any or all of the properties of the trust estate, and to execute all necessary and proper instruments for the accomplishment of such purposes. But the proceeds of mortgage loans shall be expended on properties of the trust estate for their betterment. The principal of the trust estate shall be kept intact as far as may be possible under the exercise of careful and judicious management. The principal sum of the trust estate shall at all times be invested in income bearing real property or in conservative income bearing securities. In short, my trustees are given full power and authority to do all things that I might or could do, if living and possessed of the fee title to the property conveyed to my trustees, subject only to the purposes intended to be accomplished by the trust, and subject only to expressed limitations upon their power and authority.''

''Seventh. * * * Nor order of court shall be necessary for the performance of any act, whether of conveyance, mortgage, lease, or otherwise, which the trustees are authorized to perform. * * * Nor shall the trustees be required to make reports or statements of accounting to the court.''

''Ninth. All instruments whether of conveyance, mortgage, lease, or otherwise, shall be sufficiently executed if duly signed

by two trustees, and, when so executed shall be binding upon the trust estate. * * *''

"Tenth. As long as the trustees are faithful in the execution of this trust, exercising ordinary care and diligence, they shall not be liable for any errors in judgment."

On June 10, 1919, the trustees named in item 2 of the will of Ellen T. Whitman accepted the trust created by the will and duly qualified as trustees.

On March 29, 1921, Jesse F. Stevenson tendered his resignation as trustee, and on April 9, 1921, the court accepted his resignation and appointed E. D. Samson as trustee in his stead. Samson accepted the appointment and qualified, and he, with the two daughters named, continued to act as trustees from that date to the present time. No report of the present trustees seems to have been filed until October 8, 1931, when E. D. Samson filed what is designated in the record as his "First Report." This report covered transactions from the beginning of the trust, including June 2, 1919, to the date when the report was filed. There was a prior report, however, made by Jesse F. Stevenson on March 29, 1921, showing the transactions of the estate from June, 1919, to April 11, 1921. The report of Stevenson shows that he disbursed $166.67 to Mary Whitman each month for twenty-three months, or a total of $3,833.41, and that during that time he had disbursed to Nellie W. Taylor $2,266.61, and, after the payment of taxes and expenses, the balance of the trust funds in his hands amounted to $49.19. This report of the trustee, Stevenson, was approved by the court, his resignation was accepted, and E. D. Samson was appointed as his successor.

The first report of Samson as trustee shows a receipt by him of $49.19 from his predecessor and the collection and disbursement of the rents and profits accruing from said trust estate from the time of Samson's appointment to and including June, 1931. During this period the report shows that of the net income derived from said estate Mary Whitman received the sum of $20,500.41 and Nellie W. Taylor received the sum of $21,898.50. The two reports of Stevenson and Samson, here referred to, combined, show total disbursement to the beneficiaries from the commencement of the trust to the date of the first report of Samson as follows: To Mary Whitman, $24,333.82; to Nellie W. Taylor, $24,165.11.

This first report of the trustee, Samson, shows that during the entire period from the commencement of the trust to the date of this report Mary Whitman had been paid $166.67 each month, and that such amount was ordinarily one-half of the net income from the trust estate. The report further shows that one-half of the net monthly income from the estate was sometimes more and sometimes less than the $166.67, and the balance, if any, was disbursed to Nellie W. Taylor. The report further shows that, when extraordinary expenses were incurred, Nellie W. Taylor advanced funds for their payment, and such advances were repaid to her from the later accruing net income, after payment, however, of $166.67 each month to Mary Whitman.

In an application attached to this first report of Samson, trustee, he reports that question has arisen as to whether the trustee should balance the distribution when funds permitted them to do so without reducing the income of Mary Whitman below $2,000 a year, so as to permit Nellie W. Taylor to receive as nearly as possible a full one-half of the net income; that such has been the practice of the trustee, and he asked the court to instruct as to his conduct in relation thereto in the future.

In the application the trustee also states that question has arisen as to whether or not the trustee should charge to the account of Mary Whitman a reasonable rental for the trust property she occupies as a residence, or, if not rental, the actual expenses incurred by the trust estate for taxes and insurance on this property, and asked the court for instructions on this question. It appears from later reports that the residence property which forms a part of the trust estate has been occupied during the entire existence of the trust by Mary Whitman without the payment of any rent, and that the taxes and insurance and repairs have been borne by the trust estate.

On October 13, 1931, Mary Whitman, as trustee, filed what is designated in the record as "Separate Report and Application of Mary Whitman, Trustee." In this report Mary Whitman states that she believes the accounts of items of receipts and disbursements as contained in the report of Samson, trustee, are correct, but she questions the propriety and correctness of the distribution of the net income. She complains that, contrary to the provisions of the will, there has not been a distribution of the net income monthly, and that there has not been paid

to her one-half of the annual net income of the estate each year; that during the years 1924 to 1929, inclusive, she should have received in addition to the amount paid her $2,320.75, although she admits the payment to her during the entire period of $2,000.04 each year; and she asks that the trust be authorized and directed to pay her the sum of $2,320.75 together with interest; and that Nellie W. Taylor be required to pay such amount to the trustee, Samson, for the use and benefit of Mary Whitman; and that each twelve-months period be treated as a unit for the purpose of determining the amounts due each of the beneficiaries. And she further states that, until it be found she is entitled to the use of the homestead, or dwelling house property without charge, the repairs, upkeep, taxes, and maintenance thereof be a charge upon the trust.

It does not appear that there was any hearing upon the two reports above mentioned.

On January 26, 1933, Samson, trustee, filed what is designated as his "Second Report of Trustee and Application for Instructions." In this report Samson, trustee, states that the corpus of the estate consists of the dwelling house at 1143 Pleasant street and the two business properties at 308 and 317 Walnut street, Des Moines, Iowa. This report states that, while there are three qualified trustees, the actual work of looking after the properties, collecting the rents, keeping the accounts, and making the disbursements has been done by E. D. Samson, trustee, on his own behalf and in behalf of the other trustees. He reports as to the condition of the properties, and in reference to one of the business properties, 308 Walnut street, he reports that it has become old and in poor condition, and the rental therefrom is now reduced to the nominal amount of $40 a month. He reports as to this property a large amount of past-due taxes and a tax sale of the same, and that the amount necessary to redeem from such tax sale is $2,218.75, and that the current year's taxes amounted to $950.15, making the total amount due as taxes $3,168.90, and that the trust has no sufficient amount to pay the same, and that the property has become a liability rather than an asset as far as the beneficiaries of the trust are concerned, and the trustees ask that, after a hearing upon said report, the court instruct the trustees as to what they should do in reference to said property.

On April 25, 1933, Mary Whitman, trustee, filed what is

designated "Second Separate Report and Application of Mary Whitman, Trustee," in which she complains that during the year of 1932 she only received $1,333.36, and that during that year Nellie W. Taylor received $555.59. She also refers and makes a part of her second report the statements and allegations contained in her first report. She also states that she is extremely hesitant in believing that the property at 308 Walnut street should be lost to the estate by reason of the nonpayment of the taxes, although she asks that $666.64 of the cash in the hands of Samson, trustee, be paid to her for the year 1932, to the end that her total payment would equal the sum of $2,000.

There does not seem to have been any hearing or order of the court on the last two mentioned reports.

On March 13, 1935, Samson, as trustee, filed what is designated "Fourth Report" covering transactions since the filing of his last report. He also reports that he, as trustee, has continued to look after the properties, collect the rents, and make the necessary disbursements as best he could; that Mary Whitman has continued to occupy and reside in the residence property at 1143 Pleasant street without the payment of any rent, taxes, repairs, or insurance thereon; that during the year 1935, trustee Samson collected considerable back rent from the property at 317 Walnut street which gave him sufficient funds to redeem the property at 308 Walnut street from tax sale; that the other trustees were favorable to such action, and he redeemed the said property by paying $3,555.80. To his report he attaches a detailed cash statement showing the collection and disbursement of funds during the interim from date of his last report. The trustee further asks that the report be approved and that the court instruct him as to what should be done concerning the business property at 308 Walnut street.

On March 16, 1935, Mary Whitman, as trustee, filed what is designated "Fourth Separate Report and Application of Mary Whitman, Trustee." In this report she asked that the court consider the computations and figures as contained in all prior reports; that since the date of the last or second report she has only received the sum of $100 from the trust estate; and she states further that during the period from 1924 to the filing of the last report Nellie W. Taylor has received $2,876.34 that she should not have received, and that Nellie W. Taylor is liable to the estate for that amount. She further states that she is en-

titled to $4,666.64 for the years 1932, 1933, and 1934, and prays that amount be allowed to her.

On April 8, 1935, the matters as presented by the reports we have referred to came on for hearing before the district court. The court made an order appointing F. W. Lehmann, an attorney of Des Moines, to represent Nellie W. Taylor in the matters then before the court. It was then stipulated in behalf of all three trustees that the accounts attached to the reports of E. D. Samson, trustee, are accurate statements of the amounts received and disbursed by the trust estate.

The record shows that after the making of the above stipulation the evidence was closed. There was no evidence taken, and the matters at issue seem to have been submitted to the trial court upon the reports which we have detailed above. After the submission of the case and before the final order and decree of court, Nellie W. Taylor filed an instrument in the proceedings in which she states that she took no active part in the administration of the trust, but that she believed as trustee and individually that the reports as filed by trustee, Samson, were proper and should be approved; that she also believed that it was proper for Mary Whitman to occupy the dwelling house on Pleasant street in Des Moines, and that she believed other questions presented by the reports were moot for the reason that there would not be any excess income from the estate for years to come; that ''she believed she could best minimize controversy and facilitate settlement by not filing formal reports, by not taking sides, by letting those who made the issues submit them to the court if they so insisted, and abiding by the court's decision.'' She also stated that she was not personally present at the hearing because she was willing to have those making the issues submit them to the court. She asks that the reports of Samson, trustee, be approved and that the court direct him as to the distribution of the accruing income of the trust estate in excess of $4,000 a year.

Upon the record that we have recited the district court entered a finding, order, and decree in June, 1935. In such order the court directed that Nellie W. Taylor pay to Samson, trustee, the sums of $2,320.75 and $553.59, and judgment was entered against Nellie W. Taylor for such amounts; and the court also directed that, upon payment of said amounts to the trustee, the trustee without deductions therefrom should pay the total amount to Mary Whitman, and further directed that the trus-

tees pay to Mary Whitman $1,500 for the years 1933 and 1934, and a minimum of $2,000 in 1936, and each year thereafter; that the residence property at 1143 Pleasant street, Des Moines, could be occupied by Mary Whitman without charge until the consent so to do was withdrawn by Nellie W. Taylor. The court further included in its finding and decree the following statement: ''At this time the court makes no order or finding as to the sale of real estate, it being doubtful as to whether under present market situations any advantageous sale could be had if authorized; and the court further finds that the income and expense of each calendar year shall be the basis of distribution as provided in 'Item Fifth' of the will, and the two thousand dollars per annum to Mary Whitman is a minimum and any shortage therefrom is chargeable against the corpus of the estate.''

From the above order and decree Nellie W. Taylor appealed, and cross-appeals were filed by the appellees. Nellie W. Taylor will be referred to as appellant hereafter and Mary Whitman and E. D. Samson as appellees.

The first matter to which we will give attention is the interpretation of the will of Ellen T. Whitman. It appears to us that, taking the will as a whole, as we must do, there is no repugnancy, uncertainty, inconsistency, or indefiniteness therein, and that the intent of the testatrix is plainly and explicitly expressed.

In item 2 of the will the testatrix plainly creates the trust herein involved. She bequeathed to the three trustees named a residence property and two business properties situated in the city of Des Moines, subject only to the limitations and conditions of later provisions of the will.

In item 3 she fixes the duration period of the trust as during the lives of her two daughters, Nellie and Mary.

In item 4 she disposes of the remainder, together with the accumulations, additions thereto, and accrued income, to the children of her daughter Nellie W. Taylor.

In item 5 she provides for the distribution of the *net income* of the trust estate, and this item is the one most in controversy here.

In item 6 the trustees are directed to take immediate possession of *all the property* of the estate and collect the income therefrom; to pay all necessary and proper charges; to lease any and all of the properties; to make repairs, alterations, and addi-

tions; and to erect new buildings. The trustees are also empowered to sell or mortgage any or all of the properties of the trust, but the authority here granted is limited by provisions that the proceeds of mortgage loans shall be expended for the betterment of the properties of the trust, and with further limitations and restrictions that the principal trust estate shall be kept intact, and that the principal sum of the trust shall at all times be invested in interest-bearing real property or conservative income-bearing securities. And the item further provides that the power and authority of the trustees as in said item conferred shall be subject to the expressed limitations upon their power and authority as contained in the item.

Item 7 provides that no order of court shall be necessary to authorize any act by the trustees which they are authorized to perform under the terms of the will, and that the trustees shall not be required to make reports or accounting to the court.

Item 10 provides that, as long as the trustees are faithful in the execution of the trust and exercise ordinary care and diligence, they shall not be liable for errors in judgment.

■■■ The foregoing mentioned items of the will are the only ones that we deem material to a disposition of the matters involved in this appeal. Taking these in the order in which we have quoted them, we will first dispose of one question which arises under item 2, and that is the right of the daughter, Mary Whitman, to occupy the residence property during any part of the period of the trust without paying any rent therefor or without paying the taxes, insurance, and upkeep of the property. It appears from the reports that the daughter, Mary, has occupied the homestead property since the commencement of the trust in 1919 without paying any rent therefor and without paying the taxes, insurance, and upkeep thereon. There is absolutely no authority in the will permitting such occupancy even with the consent of the trustees or other beneficiaries without the payment of rent therefor.

■■■ There appears to be included in one of the reports filed by Mary Whitman a written expression of the desire of Ellen T. Whitman, made after the execution of her will, that her daughter Mary is to have the free use of the homestead residence property during her life, and that the taxes, insurance, and repair be paid by the estate, but such instrument, if it exists, is but a precatory statement of the testatrix. It forms no part of the

will, and should not be considered in an interpretation of the will. There is also a statement filed by the daughter Nellie W. Taylor, after the submission of the matter to the trial court, consenting that her sister, Mary Whitman, continue to occupy the homestead free from any rent or charges, but this furnishes no basis for the lower court's ruling that Mary Whitman is entitled to the free occupancy and possession of the dwelling house during the period of the trust. It should be noted here that the remaindermen are not in court, and any order that the court might make in reference to waiving the rent on the residence property or any of the other matters hereinafter mentioned could in no way bind or conclude the remaindermen.

In item 6 the trustees are authorized to immediately take possession of *all property* devised under the will and to collect the rents and income therefrom. The residence property is not separated from the other property of the estate, and it cannot be said that one of the beneficiaries can occupy such residence property without charge any more than one of the beneficiaries could take possession of and occupy the most valuable piece of the business property included in the trust.

We conclude that Mary Whitman has had no right, and has none now, to continue to occupy the dwelling house, which is one of the trust properties, without paying a reasonable rental therefor as may be determined by the trustees in the exercise of care and diligence in the preservation of the estate; and that the lower court erred in its finding permitting the occupation of the dwelling house by Mary Whitman without charge.

The fifth item of the will, as quoted and set out heretofore, is the one interpretation of which the main controversy in this appeal surrounds. This paragraph provides that of "the net income" of the estate one-half shall be paid to each of the two daughters during life, with a proviso that the daughter Mary shall receive annually not less than $2,000 as her portion of the *net income* from the estate, and that the distribution of the *net income* shall be made monthly, if possible; and the item further provides that, in the event of the death of the daughter Nellie W. Taylor, the share of the *net income* that she would be entitled to receive shall be paid to the remaindermen. In the distribution of the income of the estate as made by the trustees, as shown by the reports, Mary Whitman received $2,000 each year from 1919 to and including 1931. It seems to have been concluded by the

trustees that Mary was to receive of the *net income* a minimum of $2,000 a year, and that Nellie W. Taylor should receive the balance. During the years 1924 to 1929, inclusive, the distribution made on this basis resulted in the payment to Nellie W. Taylor of $4,641.51 in excess of the payments made to Mary Whitman, and that in the year 1932 Mary received only $1,333.36 and Nellie $553.59; and the lower court held in interpreting the provision of the will now under consideration that Nellie W. Taylor owed the estate one-half of the excess paid to her, or $2,320.75, and $553.59, and that the sum of the two items should be paid by Nellie W. Taylor to the trustee, Samson, and in turn paid to Mary Whitman, together with the further sum of $113.05 out of the trust estate to make the full $2,000 payment to Mary for the year 1932; and the trial court further provided that the trustees should pay Mary the further minimum sums of $1,500 for the year 1933, $1,400 for the year 1934, and $1,500 in 1935, and $2,000 for each year thereafter. And the lower court further found that the $2,000 annual payment to Mary Whitman is a minimum, and any shortage therefrom is chargeable against the corpus of the estate. The court also entered judgment against Nellie W. Taylor for the two items of $2,320.-75 and $553.59. In this part of the order we are constrained to conclude there was also error. There is absolutely no authority under the terms of the will for the court to fix any charge in reference to the items involved against the corpus of the estate. Item 5 only has to do and provides for the distribution of the *net income* of the estate. And item 6 provides that the estate shall be kept intact so far as may be possible under the exercise of careful and judicial management, and item 4 provides that at the termination of the trust the "trust estate, with accumulations, additions thereto, and accrued income, shall vest" in the remaindermen named. It no doubt was not contemplated by the testatrix that the annual net income from the estate would fall below the $2,000 minimum provided annually for the daughter, Mary Whitman, but this unfortunate situation has occurred.

■■■ The reports show that one of the business properties, located at 308 Walnut street, has become in bad repair to such an extent that it is practically worthless, in its present condition, as a revenue-producing asset of the estate; the annual taxes thereon amounting to about $900 and the annual income from rentals not exceeding $500. This condition, however, should have

been anticipated by the trustees of the estate, and all of the property of the estate should have been kept in rentable condition; and this should have been done out of the income of all of the properties of the estate prior to any distribution of such income. "Net income" does not mean the general income of the estate without provisions for the payment of just charges, taxes, and reasonable repair and upkeep. It means the income remaining, if any, after such charges and expenses are taken care of. And the provisions of item 5 of the will must be interpreted to mean that the payments to the two daughters shall be paid only out of the *net income* after the above-mentioned charges and expenses are paid. Under such interpretation, Mary Whitman is entitled to receive annually the sum of $2,000 of the *net income* if such *net income* equals said amount, and, if such amount only remains, after the payment of the charges and expenses of the estate. And, if the *net income* exceeds the sum of $2,000 in any year, then the balance of such *net income* shall be paid to Nellie W. Taylor up to $2,000, and, if the *net income* exceeds the sum of $4,000 annually, then the total amount thereof shall be divided equally between the two daughters. The trustees have failed to follow or make this interpretation of item 5. The item provides that the distribution of the *net income* shall be made monthly, if possible; and this provision was followed by the trustees, and in so following it resulted in Nellie W. Taylor receiving during a six-year period, from 1924 to and including 1929, $4,641.50 in excess of the amount distributed to Mary Whitman, but over the whole period from the commencement of the trust to the time of trial Mary Whitman received $26,769.20 and Nellie W. Taylor received $24,995.11, so that during the entire period there was no excess payment to Nellie W. Taylor.

 The above distribution was made over the entire period of the trust, as we have indicated, without any objection thereto on the part of either beneficiary or trustee. Each of the beneficiaries, as well as all of the trustees, knew of the manner of distribution, and must be held to have acquiesced therein and agreed thereto. So, too, the failure of Mary Whitman to pay rent for the occupancy of the homestead was known to both beneficiaries and all trustees, and they must be held to have acquiesced therein and agreed thereto. But in each of the reports of the trustee, Samson, the fact was mentioned that no rent was be-

ing collected from the homestead occupied by Mary Whitman, and in each of the reports he asked for direction from the court as to what he should do in that regard. He received no such direction, for the reason that none of the reports and applications included therein were ever submitted to, or ruled upon by, the court.

In construing a trust instrument of this kind, the court may not only consider what is expressed in such instrument, but may also look at the conduct of the parties affected by the instrument in their performance of it. 65 C. J. 502; In re Leupp, 108 N. J. Eq. 49, 153 A. 842. And, when parties act under a written instrument, they show by their conduct their interpretation of that instrument and are bound thereby. They should not be permitted to later change their mind and complicate and hinder the administration of a trust created under such an instrument. McDaniels v. Whitney, 38 Iowa 60; Ditson v. Ditson, 85 Iowa 276, 52 N. W. 203; Pratt v. Prouty, 104 Iowa 419, 73 N. W. 1035, 65 Am. St. Rep. 472; Daily v. Minnick, 117 Iowa 563, 91 N. W. 913, 60 L. R. A. 840. And, too, when it develops that the interpretation put upon the instrument by the parties is erroneous, but that such interpretation has been acted upon, then all are bound by the erroneous interpretation. Hayes v. Steele, 32 Iowa 44.

In the instant case in most years during the life of the trust, Nellie W. Taylor received less of the *net income* than did Mary Whitman, but in the years 1924 to 1929, inclusive, she received more, although during the entire period Mary Whitman received $1,772.09 more than Nellie W. Taylor. During all of these years it was the duty of these beneficiaries, and as trustees, to interpret the will and perform it according to the intent of the testatrix. As a cotrustee Mary Whitman could have prevented any distribution that she considered wrong. She did not do so; not once during the six-year period from 1924 to 1929 did she complain or protest or object. She did not complain until 1931. She should not be permitted now to say that her acts and conduct were not in accordance with her interpretation of the provisions of the will. It should be noted that there is neither allegation nor proof as to any bad faith or negligence on the part of any of the trustees. Indeed, the acts of trustee, E. D. Samson, in the conduct of the trust estate and in keeping the accounts thereof and in making the complete and detailed reports, as shown by

the record, should be commended. As a matter of fact, the so-called excess payments made to Nellie W. Taylor during the six-year period mentioned would be more than balanced if Mary Whitman had been charged with rental for the residence property during the sixteen or seventeen years of the existence of the trust, and it is our conclusion that, while the interpretation given to the will by the trustees has not been in accordance with the interpretation we have announced, yet such interpretation has been in good faith on the part of all of the trustees and the two beneficiaries, and such interpretation, so far as it effects the past conduct of the trustees, should not be disturbed, and that there should be no judgment or accounting for accumulation or rental of the residence property nor the so-called excess payments to Nellie W. Taylor. However, the interpretation that we have announced in this opinion should govern the administration of the trust estate from this date.

The corpus of the estate should in any event, so far as possible, be permitted to remain intact, as provided explicitly in the will. The trustees started out with our interpretation of the provisions of the will without any appreciable amount of funds with which to repair and rehabilitate the properties of the estate, especially the business property at 308 Walnut street. It is our judgment that such property should be repaired and rehabilitated, or rebuilt, so that it may become an income-producing property for the estate. This can be done by the trustees either by permitting the income of the estate to accumulate without the distribution of any part thereof to the beneficiaries or by mortgaging the property for such purpose, as the trustees have an unquestionable right to do under the provisions of item 6 of the will. And, if such a course is not advisable or practicable in the best judgment of the trustees, then the property may be sold, under the authority of the will, but the proceeds of such sale must be reinvested in either income-producing real estate or income-producing securities. We want to make it clear, however, that the corpus of the estate must remain intact; that no payments or distribution shall be made to either of the beneficiaries of the income of the estate until such time as it is a *net income* after the payment of the expenses of the estate, including taxes, repairs, and the preservation of the corpus of the estate. Fair and reasonable rental should also be collected by the trustees

from all of the properties of the estate, including the dwelling house property.

The order and decree of the trial court is hereby set aside and annulled, and the case remanded, with instructions to enter such decree and orders as are indicated in this opinion.—Reversed and remanded.

DONEGAN, C. J., and MITCHELL, HAMILTON, ALBERT, PARSONS, and STIGER, JJ., concur.